SUMMIT OFFICE PARK, INC., a Texas corporation, acting on behalf of itself and all other Owner-Builders similarly situated, Plaintiffs-Appellants,

v.

UNITED STATES STEEL CORPORATION et al., Defendants-Appellees.

No. 79–2094.

United States Court of Appeals,
Fifth Circuit.
Unit A

March 19, 1981.

---

William E. Wright, Larry G. Patton, Houston, Tex., for plaintiffs-appellants.

Bracewell & Patterson, J. Clifford Gunter, III, Houston, Tex., for Border Steel Rolling Mills, Inc.

Morton L. Susman, Houston, Tex., for Confederate Steel Corp.

Vinson, Elkins, Searls, Connally & Smith, Houston, Tex., for U. S. Steel Corp.

Baker & Botts, Rufus W. Oliver, III, Houston, Tex., for Bethlehem Steel Corp. and The Ceco Corp.

Hutcheson & Grundy, Thad T. Hutcheson, Houston, Tex., for Laclede Steel Co.

Andrews, Kurth, Campbell & Jones, Houston, Tex., for Structural Metals, Inc. and Marvin Rinn.

Butler, Binion, Rice, Cook & Knapp, Houston, Tex., for Harry H. Gray.

Baker, Glast, Riddle, Tuttle & Elliott, W. Randolph Elliott, Dallas, Tex., for Evan V. Nance.

Breed, Abbott & Morgan, New York City, for Armco Steel Corp.

Fulbright & Crooker, Houston, Tex., for Whitlow Steel Co., Inc., Lewis Tubb and Penden Industries, Inc.

Besing & Rentzel and Geary, Brice, Barron & Stahl, Dallas, Tex., for Continental Steel Co.

Reynolds, Allen & Cook, Houston, Tex., for Schindler Bros. Steel.

Foreman & DeGuerin, Houston, Tex., for Schindler Bros. Steel and Dan Prause.

Carrington, Coleman, Sloman & Blumenthal, James E. Coleman, Jr., Dallas, Tex., for the Lofland Co. and Oscie Kirkland.

Haynes & Boone, Robin P. Hartmann, Dallas, Tex., for Huffhines Steel Co. and Allen Huffhines.

Worsham, Forsythe & Samples, Dallas, Tex., for Austin Steel Co., Royal Alexander and Roger Montgomery.

Hunter, Stewart, Salzberger & Vineyard, Dallas, Tex., for Texteel Mfg. Co. and Nash L. Kelley.

Before WISDOM, AINSWORTH and GEE, Circuit Judges.

AINSWORTH, Circuit Judge:

Summit Office Park, Inc. brought this antitrust suit against numerous steel and metal companies[1] on behalf of itself and a

---

1. Allegations of the original complaint separate the numerous defendants into two classes. The first group is termed "mills," which include individuals and firms engaged in the production and manufacture of steel reinforcing bars and rebar materials. The second group is termed "independent fabricators," which include individuals or firms not associated with a mill who

putative class seeking the recovery of damages resulting from alleged antitrust violations of the Sherman Act (15 U.S.C. §§ 1, 2) and the Clayton Act (15 U.S.C. § 15) in the sale of fabricated reinforcing steel bar (rebar) materials. The district court granted the defendants' motion for summary judgment, dismissing the claims of Summit and the class on the basis of the recent Supreme Court decision in *Illinois Brick Company*[2] since Summit and the putative class were indirect purchasers of rebar materials and the Supreme Court decision in the cited case barred antitrust claims by indirect purchasers. In its order of dismissal the district court also struck an amended complaint which attempted to substitute for the dismissed plaintiff Summit, two direct purchasers D. G. White and S. F. Sanders, Jr., Inc. as parties plaintiff and as representatives of a new and different class of direct purchasers. The district court held that Rule 15(a), Fed.R.Civ.P., does not contemplate the substitution of an entirely new cause of action, a new class, and new plaintiffs by the original plaintiff who could not benefit from the new cause of action or identify with the new plaintiffs or class.[3]

Summit's complaint, filed in November of 1973, was the first of two class action suits, later consolidated,[4] that were filed on behalf of private parties. Representing the class of "builder-owners," Summit allegedly suffered injury through payment of unlawfully inflated prices for rebar materials. According to the complaint, "the invariable and uniform practice" was for the cost of rebar materials to be paid by contractors to appellees and then passed on directly to the builder-owners for the contractors' labor and materials.[5] Of the thirty-one defendants named in the suit, four answered the complaint; the remainder filed various motions to dismiss under Rule 12, Fed.R.Civ.P.

Following the initial filing of pleadings and motions, the case lay dormant until June of 1977 when the Supreme Court rendered its decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), which held that indirect purchasers such as plaintiff Summit herein had no cause of action under federal antitrust laws in cases such as the instant suit. During this period, no formal motion for class certification was made, no class was certified, and no ruling was made on defendants' Rule 12 motions.

Within two weeks after the *Illinois Brick* decision, defendants moved for summary judgment. After waiting long enough to assure himself that no legislative action

are engaged in the fabrication of rebar materials.

2. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).

3. Rule 15(a), Fed.R.Civ.P., pertaining to Amended and Supplemental Pleadings reads as follows:

(a) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

4. T&T Builders Company, along with more than one hundred other named plaintiffs, filed a similar class action in the same federal district court shortly after Summit filed this complaint. These two suits were consolidated with two other civil actions of a similar nature brought by the United States Government and the State of Texas.

5. It is clear from the complaint that the original class did not include contractors such as D. G. White and S. F. Sanders, Jr., Inc. According to article 11 of the original complaint, "[w]here re-bar materials are sold to a contractor, it is an invariable and uniform practice for the contractor to 'pass' the cost of re-bar materials, as well as other supplies, directly on to the builder-owner, whether commercial, institutional, or governmental, together with a mark-up on such direct cost as a profit factor." Obviously, a class of "builder-owners" was not intended to encompass contractors. In the proposed amended complaint both Sanders and White are defined as "concrete contractors."

would be taken by Congress to overturn *Illinois Brick*, the district judge announced he would decide the case in light of that Supreme Court ruling by May 2, 1978. However, on May 1, Summit attempted to file an "amended complaint" on behalf of a restructured class limited only to direct purchasers. The new amended complaint added two new plaintiffs, White and Sanders, who purported to be direct purchasers. The new amended complaint also changed the cause of action in an apparent attempt to conform to the principles set forth in the *Illinois Brick* decision. Additionally, Summit admitted in the new amended complaint, along with a letter to the trial judge two weeks later, that it was only an indirect purchaser.[6]

In August 1978, the district court issued its order in which it granted summary judgment as to all causes of action filed on behalf of indirect purchasers.[7] In its order, the court also disposed of the attempt to substitute new plaintiffs, a new class, and

new cause of action by way of amendment. The court held that the Federal Rules of Civil Procedure do not contemplate the use of the amendment process in this manner. The court likened this attempt to amend the complaint to the procedural posture of a lawsuit in search of a sponsor. It noted that the cause of action and original named plaintiff had been dismissed, and that no named plaintiff or certified class member remained with any further stake in the outcome of the litigation. Continuing, the district judge stated, "such a 'revolving door' theory of representation through the imaginative use of the amendment process . . . would vest in plaintiffs' counsel a power and control over litigation, particularly class action litigation, heretofore not recognized by the federal courts." In addition, the court observed that no one with a valid claim remained to urge the amendment and that any litigation on behalf of direct purchasers should be filed in a new lawsuit.[8]

---

**6.** The May 15, 1978 letter from William E. Wright, counsel for Summit, to the district judge (Judge Bue) reads in pertinent part as follows:

> While the addition of the party-plaintiffs S. F. Sanders, Jr., Inc. and D. G. White, as direct purchasers, has been properly effected, we are left with the standing issue pertaining to the original sole plaintiff, Summit Office Park, Inc. ("Summit"). Although the filing of the Amended Complaint moots the pending motions for partial summary judgment and dismissal on this issue, Summit remains vulnerable. In Plaintiffs' Amended Complaint, Summit concedes its position as an "indirect purchaser" of rebar materials alleging in paragraph 4 that it ". . . has made substantial purchases of rebar materials *through its contractors* from one or more of the named Defendants."
>
> Accordingly, as Summit is aware, it no longer possesses standing under the pronouncements of the *Illinois Brick* decision, nor does it possess sufficient adequacy to represent the class. The class, as redefined, is now protected by the presence of the additional party-plaintiffs. While summary judgment may not be appropriate, Summit admittedly is subject to some species of dismissal germane to the concept of judgment upon the pleadings. Because of the continued pendency of proposed legislation which may restore standing to indirect purchasers, counsel for Summit has felt that he could not voluntarily dismiss and that the more prudent and re-

> sponsible course of action would be to leave that responsibility with this Court.

Rec., vol. 4, at 810.

**7.** District Judge Bue's order dealt with each of the consolidated cases; therefore, the summary judgment applied to indirect purchasers not only in *Summit Office Park*, but also in the suit involving the State of Texas and T&T Builders. *See* note 4.

**8.** The district court opinion states in pertinent part as follows:

> Thus, through the procedural vehicle of Fed. R.Civ.P. 15(a), counsel for plaintiffs have proposed a novel procedure whereby, if adopted, an entirely new cause of action premised on direct purchases and prosecuted by an entirely new set of plaintiffs can be plugged in by plaintiffs' counsel following the grant of summary judgment against the original plaintiffs so as to keep alive, albeit in different form, the lawsuits in this Court.
>
> The Court has considered in detail the respective legal memoranda submitted by counsel and the legal authorities cited therein, none of which address specifically the instant issue, and is of the opinion that the federal rules, no matter how liberally construed, do not contemplate or otherwise permit the drastic step proposed by plaintiffs' counsel. Although pled, no plaintiffs' class has been certified. Thus, the existing causes of action and named plaintiffs having been

The amended complaint was treated as a motion for leave to amend and stricken by the court.

Summit and the new parties plaintiff appeal, asserting a right to amend the complaint as a matter of course. In the alternative, they contend that the district court abused its discretion in denying leave to file the amended complaint. We affirm.

■ The circumstances of this case are unique. Here the original plaintiff was left with no cause of action upon which it could recover as the result of an intervening Supreme Court decision. There was no way in which the plaintiff could properly amend the complaint to give it a cause of action. Plaintiff had no identity of interest with either the new proposed plaintiffs, or the new class named in the complaint, or their cause of action. It is clear that the new cause of action which the new proposed amended complaint attempted to insert could not benefit the original plaintiff.[9]

The order of the district court is not contrary to the liberal use of the amendment process in federal practice. Nor is our decision in this case a restriction or limitation on the amendment procedure as it pertains to adding parties plaintiff or curing a defect in the cause of action. Rather, we hold only that where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action.

The principal issue involved is not whether the complaint can be amended as a matter of course, as urged by appellants, but under the special circumstances here whether Summit could offer an amendment to the complaint at all. Since there was no plaintiff before the court with a valid cause of action, there was no proper party available to amend the complaint. Thus none of the appellants had a right to file the amended complaint.

It is clear that once the Supreme Court's decision in *Illinois Brick* was announced, Summit as an indirect purchaser of materials had no standing to assert a claim against defendants. No amendment could give Summit a cause of action. Summit twice conceded it was only an indirect purchaser: once at the time of its attempt to amend and also later in the letter to the district court judge.[10] Since Summit had

---

dismissed, there remains no named plaintiff or certified class member with a direct, personal interest in the outcome of the litigation who otherwise might possess the present right to step forward and urge amendment. Thus, as stated by Judge Gee, dissenting in *Satterwhite v. City of Greenville*, 557 F.2d 414 (5th Cir. 1977), rehearing en banc granted, November 1, 1977,

"we now have before us no one who has a continuing stake in the controversy, only a potential lawsuit searching for a sponsor." *Id.* at 425. These two actions are in an analogous procedural posture, there being, in the words of Judge Gee, a sponsor, plaintiffs' counsel, searching for a potential lawsuit. Such a "revolving door" theory of representation through the imaginative use of the amendment process, if approved by this Court, would vest in plaintiffs' counsel a power and control over litigation, particularly class action litigation, heretofore not recognized by the federal courts. Thus, without addressing the merits of each step in the procedural formula which plaintiffs urge this Court to follow, the Court concludes that the grant of partial summary judgment as to the indirect-purchaser causes of action pursuant

to *Illinois Brick* precludes the after-the-fact formation of a new, distinct set of direct-purchase plaintiffs and their inheritance of the existing litigation. Rather, any such prosecution by direct purchasers must be filed anew.

**9.** In the companion case involving T&T Builders, the two substitute plaintiffs who also unsuccessfully attempted to enter the case by amendment accepted the district court's holding that any suit by direct purchasers must be filed anew. These two plaintiffs then began a new lawsuit by filing a complaint against defendants on behalf of the same class which White and Sanders sought to represent. Thus there was no prejudice to either White or Sanders since they also had the option to file their own suit or intervene in the companion case instituted by their fellow direct purchasers.

**10.** Defendants contend that Summit had, in essence, admitted its status as an indirect purchaser much earlier when it refused to answer or object to interrogatories inquiring whether Summit had ever purchased rebar materials directly from any defendant.

no standing to assert a claim, it was without power to amend the complaint so as to initiate a new lawsuit with new plaintiffs and a new cause of action.

11. Appellants rely on *McLellan v. Mississippi Power & Light Co.*, 526 F.2d 870 (5th Cir. 1976), *modified on other grounds*, 545 F.2d 919 (5th Cir. 1977) (*en banc*) where we held that a plaintiff could amend his complaint to add defendants under Rule 15(a) without seeking leave of court under Rule 21 which provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any state of the action and on such terms as are just." The cited case is inapposite. The amendment in *McLellan* only added defendants. The original plaintiff who filed the initial complaint continued to have a stake in the controversy. He still had standing to file the amendment adding defendants. This is not the situation here since neither the original plaintiff nor the putative class could obtain relief under any available legal theory. Here, neither Summit nor the putative class has any continuing interest in the controversy.

The other cases cited in appellants' brief are inapplicable. Of these cases, only one deals with a change of plaintiffs. In that case, *Longbottom v. Swaby*, 397 F.2d 45 (5th Cir. 1968), only the description of the capacity in which the plaintiffs sued was changed by the amended complaint. Two cases, *Case v. State Farm Mutual Auto Insurance Co.*, 294 F.2d 676 (5th Cir. 1961) and *Jones v. Diamond*, 519 F.2d 1090 (5th Cir. 1975), do not involve any attempt to amend a complaint. The rest of the cases involve either an addition of extra defendants, an expansion of the facts, or the accession or withdrawal of alternate theories of recovery. Not one of the cases deals with an amendment by which the plaintiff and class in the original complaint are substituted for new parties, a new class, and a new cause of action. In each case, the original plaintiff continued to have a valid claim and an interest in the outcome of the litigation.

Cases not in appellants' brief, such as *Moore v. Coats Company*, 270 F.2d 411 (3rd Cir. 1954), that substitute defendants by an amended complaint in order to obtain "venue jurisdiction," are also inappropriate for the same reasons. As in *McLellan*, the original plaintiff who filed the initial complaint continued to have an interest in the outcome of the litigation. He possessed standing to amend the complaint to add the defendant.

12. There have been cases brought to our attention that involve a substitution of plaintiffs other than those circumstances specifically allowed in Fed.R.Civ.P. 25. However, none is completely analogous to the instant case.

In *National Maritime Union of America v. Curran*, 87 F.Supp. 423 (S.D.N.Y.1949), the court

No case has been brought to our attention directly in point with the circumstances presented here,[11] but there are two district court cases which are closely analogous.[12]

rejected an amendment that would have substituted new plaintiffs for all the original parties plaintiff and would also change the form of the relief requested. In its opinion the court enumerated three categories of cases in which substitution of the parties plaintiff may be allowed under the liberal interpretation of Rule 15 on amendments. In the first category the substitution is only a change in the capacity in which the original plaintiff brought the action. The second category covers those situations when the United States Government has taken over the action as the real party in interest. Finally, the third category allows substitution of plaintiffs to correct a mistake as to the person entitled to bring the suit. *See also Bucalo v. General Leisure Products Corp.*, 54 F.R.D. 483 (S.D.N.Y.1971).

The first two categories clearly do not apply to the instant case. Although the present suit is more than just a mistake as to the proper plaintiff, the third category comes closer to our case than the other two.

The court in National Maritime Union relied on three cases to form its third category. The first two cases are totally inapposite since one is based on the now defunct Supreme Court Admiralty Rules and the other on Fed.R.Civ.P. 24 concerning intervention. The third case in this category, *Hackner v. Guaranty Trust Co. of New York*, 117 F.2d 95 (2d Cir. 1941), involved a class action suit where a new plaintiff was allowed to come in by an amended complaint and take over the cases where none of the plaintiffs had claims within the jurisdictional amount. Although at first glance this case appears similar to the present suit, there exist fundamental differences. As pointed out in *National Maritime Union*, all the named plaintiffs in *Hackner*, including the new plaintiff, had claims identical in substance. 87 F.Supp. at 427. The claims differed only in the jurisdictional amount sought for their individual injuries. Neither the class nor the cause of action was changed in the amended complaint. The original plaintiffs had valid claims, which, as members of the class they originally proposed, they could still recover upon in the new complaint. Therefore, in *Hackner*, both the original named plaintiffs and class they represented continued to have a stake in the outcome of the same controversy. Thus, they had standing to amend. In the instant case, the change in plaintiffs was accompanied by a change in substance; there is a new cause of action. In addition, the amended complaint substitutes not only a new plaintiff but also a totally new class. Here, neither the original named plaintiff nor any member of the original class continues to have any stake in the case. They are

In *Turner v. First Wisconsin Mortgage Trust*, 454 F.Supp. 899 (E.D.Wis.1978), a plaintiff brought a class action suit under the Securities Act of 1933 concerning securities purchases made in connection with a false registration statement. The court determined that plaintiff had no cause of action and no standing to bring the action in either an individual capacity or as the representative of the putative class. However, plaintiff attempted to amend the complaint to add two new plaintiffs who were arguably members of the yet uncertified class who had a valid claim against the named defendants. The court held that under Rule 15, a plaintiff who cannot proceed on the basis of the complaint "has no right to amend . . . to bring in other parties who will thereafter remain as parties when the complaint is dismissed as to the original party." *Id.* at 913.

The court in *Turner* cited a similar holding in *Schwartz v. The Olympic, Inc.*, 74 F.Supp. 800 (D.C.Del.1947). There, the plaintiff lacked standing to maintain an action to set aside a merger since he was an unregistered stockholder. Plaintiff sought to amend his complaint to add additional parties plaintiff. The court dismissed the complaint and ruled that if a plaintiff "cannot maintain his own complaint, he has no right to amend it." *Id.* at 801.

■ It is clear that the two new parties plaintiff named in the proposed amendment, White and Sanders, likewise cannot amend the original complaint. Appellants attempt to depict Sanders and White as members of the original putative class who, as such, had a right to propose this amendment. However, Summit brought the original action on behalf of "builder-owners." More than once the allegations of the complaint separate "contractors" from the term "builder-owner." As we have said, article 11 of the complaint specifically points out that the class of builder-owners was injured by costs passed on to them by contractors. The proposed amendment terms both White and Sanders as "concrete contractors," not builder-owners.

■ The district court order in this case is consistent with the purpose of Rule 15(a) since the intent of the rule is to assist the disposition of litigation on the merits of the case rather than have pleadings become ends in themselves. *United States v. Hougham*, 364 U.S. 310, 317, 81 S.Ct. 13, 18, 5 L.Ed.2d 8 (1960); *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *McLellan v. Mississippi Power & Light Co.*, *supra* at 873; 3 Moore's Federal Practice § 15.02[1] at 15–13. However, the merits of this case as far as plaintiff Summit is concerned were effectively decided by *Illinois Brick*. Summit therefore had no claim it could properly assert. The only proper way a claim could be made was to file a new complaint with new plaintiffs, a new class, and a new cause of action.

The district court's refusal to accept the amended complaint did not frustrate the policies of Rule 15. At the time of the court's order, no party was prejudiced. Summit had no case left to assert. As for White, Sanders, and the class of direct purchasers, their claims could be asserted and rights protected by filing a new lawsuit in the proper forum, rather than by attempting to participate in the original litigation.[13]

A pleading which abandons the original plaintiff and class and asserts new claims upon which the original plaintiff and class could not recover, has the characteristics of a new lawsuit rather than an amended complaint. In view of the fact that the district court's ruling did not adversely affect those plaintiffs who had legitimate claims, the

precluded from recovery and lack standing to amend.

13. To hold that the district court had no discretion but to permit such an "amendment" as was sought here would be to open the door to many foreseeable anomalies and some which, doubtless, we cannot foresee. As one example, though of course nothing of the kind has happened here, counsel having several cases pending trial on the court's docket might, upon arriving at settlement of one enjoying an advanced position there, simply amend it to assert the claims made in one of his later filed actions—or a new action entirely—rather than dismissing it.

court's refusal to permit the amendment was a just and reasonable disposition of a novel procedural problem.

AFFIRMED.

WISDOM, Circuit Judge, dissenting:

The Court's holding, as stated in the majority opinion, is that "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action". This superficially persuasive argument rests on the conceptual—more accurately, the metaphysical—notion that "[s]ince there was no plaintiff before the court with a valid cause of action, there was no proper party available to amend the complaint". The logic of this ruling would forbid the addition of a new plaintiff, a new class, or new cause of action by amendment whenever a complaint is subject to dismissal. The change in the litigation, whether or not prejudicial to a defendant, would have to be effected by filing a new complaint. I respectfully disagree with this unwarranted judicial amendment to Rule 15(a).

It is important to realize what this case does and does not involve. No one doubts that the proposed amended complaint states a valid cause of action. There is no issue of whether the proposed amendment will relate back to the date of the original complaint, for the parties agree that the statute of limitations had not run at the time the proposed amendment was filed. Nor does this case involve a proposed amendment entered after dismissal of the original complaint.[1] Although it is true that the defendants filed their summary judgment motion before Summit filed its proposed amendment, both issues were before the district court at the same time. The dis-trict court, therefore, was bound to consider the propriety of an amendment that would save the action if accepted before ruling on the summary judgment motion.[2] The majority opinion does not, as I read it, depend on substantive antitrust law or on the peculiarities of class action procedure. Rather, it places generally applicable limits on the sort of amendment that may be made to pleadings under the Federal Rules of Civil Procedure—if for any reason the original complaint is faulty. That just cannot be the law.

Rule 15(a) governs amendments:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

Neither the text of the Rule nor the Advisory Committee's Notes suggest that the words "party" or "amendment" are terms of art in Rule 15(a). Unless there is good reason to inject special meaning into those words—and I see none—any party who has not been dismissed from an action should be a Rule 15(a) "party" with the right to amend, and "amendment" should comprehend any statement of a valid claim or defense. The majority, however, in effect reads them as terms of art.

---

1. Cf. *In re Beef Industry Antitrust Litigation,* 5 Cir. 1979, 600 F.2d 1148, 1161–62, *cert. denied,* 1980, —— U.S. ——, 101 S.Ct. 280, 66 L.Ed.2d 137.

2. A motion for summary judgment is not a "responsive pleading" for purpose of Rule 15(a). *McLellan v. Mississippi Power & Light Co.,* 5 Cir. 1976, 526 F.2d 870, 872 n.2, *modified on other grounds,* 1977, 545 F.2d 919 (en banc); *McDonald v. Hall,* 1 Cir. 1978, 579 F.2d 120, 121. *See generally* 6 Moore's Federal Practice ¶ 56.10 (2 ed. 1976); 10 C. Wright & A. Miller, Federal Practice and Procedure § 2722, at 478 (1973).

One consequence of this holding at least is clear. If a proposed amendment, according to the majority, is not a Rule 15(a) "amendment", it not only cannot be filed as a right, but it cannot be filed even with leave of court. The majority's hint to the contrary, at 1284 n.13, appears to me to be inconsistent with its holding.

The full scope of the holding is difficult to discern. It is settled that a Rule 15(a) amendment can add new causes of action and new theories of recovery, even if the original complaint did not state a valid cause of action.[3] In this Court, it is settled that an amendment can add parties to a lawsuit.[4] It is also generally held that a plaintiff may drop claims or parties by amendment.[5] Yet the majority rejects an amendment that does all three of these things at once. It is not clear to me whether the majority is implicitly overruling one of these three bits of settled law, or whether it holds that these three bits, harmless in themselves, reach critical mass and explode when applied in one amendment. The majority's statement that "[s]ince there was no plaintiff before the court with a valid cause of action, there was no proper party available to amend the complaint" and its approving citation of *Schwartz v. The Olympic, Inc.*, D. Del. 1947, 74 F.Supp. 800, 801 to the effect that if a plaintiff "cannot maintain his own complaint, he has no right to amend it", are ominous. Both seem to imply, contrary to all precedent, that a complaint not stating a cause of action may not be amended—a holding that eviscerates the primary function of Rule 15(a).

The Court's justification for attempting to limit Rule 15(a) in this fashion is equally difficult to understand. "It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of ... mere technicalities." *Foman v. Davis*, 1962, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222. This is not a "potential lawsuit searching for a sponsor". The propose amendment brings an otherwise valid complaint by real, live plaintiffs before the district court. The manner in which the complaint came before the court should be irrelevant unless it prejudices someone in some articulable way. But since the amended complaint offered by Summit could have been filed as new action, it is not easy to see who would be prejudiced by accepting it as an amendment instead. Certainly not the defendants, who would be in the same position as they would have been had the amendment been brought as an original complaint. The only difference between the two situations is that the "new" suit inherits the docket number of the old under the amendment some route.[6]

The majority opinion suggests that this inheritance might have two undesirable side effects, but, with deference, I suggest that neither bears up under analysis. First, echoing the district court, the majority states that if the amendment were allowed, the plaintiff or plaintiff's counsel would be able to exercise "undue control" over class action litigation. The majority does not, however, explain how this amendment would give Summit's counsel more control over the action than he would have had if he had filed

**3.** *McLellan v. Mississippi Power & Light Co.*, 5 Cir. 1976, 526 F.2d 870, 873, *modified on other grounds*, 1977, 545 F.2d 919 (en banc). *See generally* 3 Moore's Federal Practice ¶ 15.08[2], at 15–68 to –71 (2 ed. 1980); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1474, at 379–85 (1971).

**4.** *McLellan v. Mississippi Power & Light Co.*, 5 Cir. 1976, 526 F.2d 870, 872–73, *modified on other grounds*, 1977, 545 F.2d 919 (en banc). Although *McLellan* involved an attempt to add defendants rather than plaintiffs, there is no reason to distinguish the two situations. *See generally* 3 Moore's Federal Practice ¶ 15.07[2] at 15–54, ¶ 15.07[3], ¶ 15.08[5] (2 ed. 1980); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1479, at 400–402 (1971).

**5.** *E. g., Johnston v. Cartwright*, 8 Cir. 1966, 355 F.2d 32, 39. *But see Neifeld v. Steinberg*, 3 Cir. 1971, 438 F.2d 423, 430. *See generally* 3 Moore's Federal Practice ¶ 15.07[3], at 15–58 (2 ed. 1980); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1479, at 400 (1971).

**6.** The court also loses an extra filing fee, of course, but that is trivial. *Cf. Morrow v. Spiess*, 10 Cir. 1965, 349 F.2d 931, 933.

a new complaint on behalf of White and Sanders. This suggestion seems to derive from the fact that similar class suits, since consolidated, were filed in the same district by other counsel after Summit's original complaint was filed. By filing this new claim as an amendment rather than as an original complaint, Summit's counsel might be able to argue that his client filed first, and so would enjoy priority for being chosen as lead counsel for the plaintiff class in the consolidated actions, if such a choice is necessary. But if a district court finds it advisable to appoint lead counsel, the selection should not be based on who filed suit first, but on the ability of the counsel to represent the class.[7]

Second, the majority suggests in a footnote that counsel having several cases pending trial on a court's docket might amend the complaint in an advanced case to assert the claims made in one of his later filed actions. At 1284 n.13. But that tactic is built into the Federal Rules. An amendment may add a new claim by the same plaintiff against the same defendant; a new claim by the same plaintiff against a new defendant; a new claim by a new plaintiff against the same or a different defendant. All of these amendments give particular claims a docket advantage by being filed as amendments rather than as new complaints. Unless the majority is prepared to exclude all such amendments from Rule 15(a), there is no reason to single any for exclusion. In any case, the potential for abuse is trivial. Amendments may be made without the consent of the district court only until the opposing party files a responsive pleading—which, except in unusual situations, will be a relatively brief interval. Suits can be advanced on the docket by this tactic only if they are filed within that brief interval, and they would advance only by that interval.[8]

As I read the Federal Rules, an otherwise valid claim can properly be brought before the court through any procedure not violative of the letter of the Rules. It is well established, for example, that even if a court has no jurisdiction over a plaintiff's claim, it may treat the pleading of an intervenor under Rule 24 as a separate action if there is a separate basis of jurisdiction as to the intervenor's claim.[9]

*In a footnote* the Court disposes of a case virtually on all fours with this one, *Hackner v. Guaranty Trust Co.*, 2 Cir. 1941, 117 F.2d 95, *cert. denied*, 1941, 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520. In that case, Hackner, Bowman, and Ballinger jointly filed suit against Guaranty Trust on certain notes, with jurisdiction based on diversity. On the face of their complaint, however, none of the three parties plaintiff met the jurisdictional amount. They had less "standing", it might be said, than Summit in this case. In an amended complaint filed as of right Bowman was dropped from the suit and York and Eastman were added as parties plaintiff. York did not meet the jurisdictional amount either, but Eastman did.

---

7. *E. g., Amos v. Board of School Directors,* E.D.Wis. 1976, 408 F.Supp. 767, 771–76, *aff'd,* 7 Cir. 1976, 539 F.2d 625, *vacated on other grounds,* 1977, 433 U.S. 672, 97 S.Ct. 2907, 53 L.Ed.2d 1044; *Feldman v. Hanley,* S.D.N.Y. 1970, 49 F.R.D. 48, 50–51. *See* Manual for Complex Litigation § 1.44 (1978). *See generally* 3 H. Newberg, Class Actions § 3700 (1977).

8. The appellees' counsel suggested in oral argument that the defendants might have been prejudiced if the statute of limitations ran between the time the original complaint was filed and the time the amendment was filed. But Rule 15(c) expressly provides that not all amendments relate back to the date of the original complaint; only amendments relating to the same "transaction or occurrence" as the original complaint.

9. *McKay v. Heyison,* 3 Cir. 1980, 614 F.2d 899, 906–07; *Miller & Miller Auctioneers, Inc. v. G. W. Murphy Industries, Inc.,* 10 Cir. 1973, 472 F.2d 893, 895; *Atkins v. State Board of Education,* 4 Cir. 1969, 418 F.2d 874; *Fuller v. Volk,* 3 Cir. 1965, 351 F.2d 323, 328–29; *Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* S.D.N.Y.1979, 477 F.Supp. 615, 622; 7A C. Wright & A. Miller, Federal Practice and Procedure § 1917, at 584–86 (1972). Some of these cases say that the district court has "discretion" to treat an intervenor's pleadings as a separate action, but that is because intervention in these cases was not possible as of right under Rule 24(a), but only by leave of court under Rule 24(b). *See McKay v. Heyison,* 3 Cir. 1980, 614 F.2d at 906–07.

Suit was dismissed as to all of the plaintiffs except Eastman. In an opinion by Judge Charles E. Clark, who served as reporter for the Federal Rules Advisory Committee that drafted Rule 15, the court held that the amended complaint was a valid way of commencing suit between Eastman and the bank, even though all of the original plaintiffs had to be dismissed:

> This disposes of the case as to all the plaintiffs except Eastman. Since she alleges grounds of suit in the federal court, the only question is whether or not she must begin a new suit again by herself. Defendants' claim that one cannot amend a nonexistent action is purely formal, in the light of the wide and flexible content given to the concept of action under the new rules. Actually she has a claim for relief, an action in that sense; as the Supreme Court has pointed out, there is no particular magic in the way it is instituted. *Chisholm v. Gilmer*, 299 U.S. 99, 57 S.Ct. 65, 81 L.Ed. 458, upholding a suit instituted by mere motion for judgment. Cf. Fowler, Virginia Notice of Motion Procedure—A Case Study in Procedural Reform, 24 Va.L.Rev. 711. So long as a defendant has had service "reasonably calculated to give him actual notice of the proceedings," the requirements of due process are satisfied. *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 343, 85 L.Ed. 278, decided December 23, 1940. Hence no formidable obstacle to a continuance of the suit appears here, whether the matter is treated as one of amendment or of power of the court to add or substitute parties, Federal Rule 21, or of commencement of a new action by filing a complaint with the clerk, Rule 3. In any event we think this action can continue with respect to Eastman without the delay and expense of a new suit, which at long last will merely bring the parties to the point where they now are.

> . . . . .

> ... Now under the rules an action once commenced by the filing of a complaint—which is what Eastman's "amendment" amounted to—remains pending until dismissed by the court under Rule 41(b) for lack of due diligence in prosecution.

Similar results have been reached by cases following *Hackner*.[10] The majority offers no substantial reason for distinguishing this case from that. *National Maritime Union of America, v. Curran*, S.D.N.Y. 1949, 87 F.Supp. 423, cited by the majority, itself recognized that all the original plaintiffs in a suit can be dropped and new ones added by amendment. *Id.* at 425–26. Although the district court there chose not to permit the amendment, it did so only under the theory that amendments adding or dropping parties must meet Rule 21's leave of court requirement as well as the requirements of Rule 15. That theory has been rejected by this Court. *McLellan v. Mississippi Power & Light Co.*, 5 Cir. 1976, 526 F.2d 870, 872–73, *modified on other grounds*, 1977, 545 F.2d 919 (en banc). The two district court opinions upon which the majority chiefly relies, *Turner v. First Wisconsin Mortgage Trust*, E.D.Wis. 1978, 454 F.Supp. 899, 913, and *Schwartz v. The Olympic, Inc.*, D.Del. 1947, 74 F.Supp. 800, 801, were both brief *ex cathedra* rulings

10. *E. g., Health Research Group v. Kennedy*, D.D.C. 1979, 8 F.R.D. 21, 29–30; *Board of Elections v. Lomenzo*, S.D.N.Y. 1973, 365 F.Supp. 50, 53; *Morrow v. Spiess*, 10 Cir. 1965, 349 F.2d 931, 933; *Pioche Mines Consolidated, Inc. v. Dolman*, 9 Cir. 1964, 333 F.2d 257, 265, *cert. denied*, 1965, 380 U.S. 956, 85 S.Ct. 1081, 13 L.Ed.2d 972; *Moore v. Coats Co.*, 3 Cir. 1959, 270 F.2d 410. It is true that this case involves an amendment to change plaintiffs and *Moore*, for example, involved a change of defendant, but the majority does not explain what practical difference that distinction makes. At 1283 n.11. *See also Technical Tape Corp. v. Minnesota Mining & Mfg. Co.*, 2 Cir. 1952, 200 F.2d 876, 879 (Clark, J., concurring). ("The only suggested bar is a judicial gloss on the broad terms of the rule to the effect that only a 'good' complaint may be amended. But to such a suggestion we gave the proper answer in the early days of the rules: [quoting *Hackner*] ... [I]f there is a real reason in the particular case why later matter should not be considered, that reason should be adduced and decision rest upon it, not on some formal generalization read into the rules contrary to their spirit.").

unsupported by analysis or citation of precedent.

In summary, the majority does not show that the Rule 15(a) was designed to place implicit restrictions on amendments that may be made to pleadings, and it does not identify a single way in which this amendment, or any similar amendment of right, would cause prejudice to any litigant or would complicate case management. If I may say so, with deference, the ill-defined rule through which it proposes to distinguish between allowable and unallowable amendments furthers no ascertainable goal, and promises to promote dilatory contests over whether a particular amendment is allowable as an amendment or must be filed as a new complaint.[11]

I respectfully dissent.

11. Because it holds that the amendment offered by Summit was not a Rule 15(a) "amendment", the Court does not to reach the questions: (a) whether the filing of answers by four of the thirty-one defendants cut off Summit's right to amend its complaint without leave of court; and (b) if so, whether the district court abused its discretion in denying leave. I would follow *Pallant v. Sinatra*, S.D.N.Y. 1945, 7 F.R.D. 293, 300, and rule that as to claims for which defendants are alleged to be jointly liable, amendment of right should be permitted until all of the defendants have answered. *But cf.* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1481 (1971).