# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 1, 2016

No. 15-31005

Lyle W. Cayce
Clerk

ALFRED COTTON; RUBBIE COTTON; FIRST AMERICAN BANK AND TRUST,

        Plaintiffs - Appellees

v.

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON,

        Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before WIENER, CLEMENT, AND COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Alfred and Rubbie Cotton were among the thousands of Louisianans whose properties were either damaged or destroyed when Hurricane Isaac made landfall in August 2012.  The Cottons owned seven rental properties in LaPlace, Louisiana; each was damaged during the storm.

The Cottons' properties were covered by both wind and flood insurance. They had purchased a windstorm policy from Scottsdale Insurance Company. They had failed to purchase a flood policy, but their mortgage lender, First American Bank and Trust, wanted to protect its collateral.  So First American obtained a "force-placed" flood policy from Certain Underwriters at Lloyd's of

No. 15-31005

London.  After the storm, the Cottons and First American filed claims under their respective policies.  Both insurers paid for some damage, but not enough according to the insureds.

In October 2013, the Cottons filed suit against Scottsdale, seeking additional payment for their wind-related damage.  Two months later, the Cottons added Underwriters as a defendant and alleged that they were entitled to additional payment for flood damage.  Underwriters moved to dismiss, arguing that the Cottons were not parties to the flood policy and therefore lacked standing to enforce that policy.  The Cottons responded by seeking leave to file a second amended complaint adding First American—the actual insured under the flood policy—as a plaintiff.  The court granted leave to amend.

The Cottons ultimately settled their wind claims, which led to Scottsdale being dismissed.  The Cottons' claim against Underwriters was also dismissed after the court ruled that because they were "not named insured[s], additional insured[s], or third-party beneficiaries under the [flood insurance] [p]olicy," they could not sue to enforce it.

That left the claim that was added in the second amended complaint: First American's breach of contract claim against Underwriters.  Underwriters sought summary judgment on the merits of that claim, arguing that First American failed to timely submit a formal proof-of-loss statement and could not prove that the approximately $232,000 Underwriters already paid was insufficient to repair the properties' damage.  But the court found that fact issues precluded summary judgment.

The week before trial, Underwriters tried again to have First American's claims dismissed, this time on procedural grounds.  Underwriters argued that because the Cottons lacked "standing" to sue under the flood policy, the district court did not have jurisdiction to entertain the Cottons' motion to file an amended complaint that added First American as the proper party in interest.

2

No. 15-31005

Underwriters also argued that even if the court had jurisdiction to add First American's claim, the late date when that was done (February 2015) meant the claim had prescribed. The district court rejected both arguments. As for jurisdiction, the court held that because the Cottons had standing to file their original complaint against Scottsdale, the court had jurisdiction over the case that allowed the Cottons' amendment adding an additional party. The court further found that First American's claim was timely for two reasons. First, the policy required First American to sue within twelve months of when Underwriters denied a claim, which Underwriters did not do until after First American sued. Alternatively, it concluded that First American's claim related back to the filing of the Cottons' claim against Underwriters, which occurred within 24 months of the loss in accordance with Louisiana Revised Statutes Section 22:868(B).

The case then proceeded to trial at which the jury found in First American's favor and awarded additional amounts for each of the properties, totaling $115,279.33. Underwriters moved for judgment as a matter of law, but the district court denied the motion.

## I.

Underwriters again challenges the district court's subject matter jurisdiction and the timeliness of First American's claims. It also challenges the jury's findings that Underwriters received sufficient notice of First American's loss and that the properties suffered damage in excess of the amount Underwriters already paid under the flood policy. We start our analysis, of course, with jurisdiction.

Underwriters argues that the Cottons lacked standing to bring a claim under the flood policy, which meant the district court lacked jurisdiction to allow the amended complaint that brought First American into the case.

3

No. 15-31005

Because this argument depends on showing an absence of subject matter jurisdiction, Underwriters needs to show a lack of Article III standing.

"Standing," however, is a label used to describe different things in the law. It can describe whether a party has a right to sue under a contract. *Novartis Seeds, Inc. v. Monsanto Co.*, 190 F.3d 868, 871 (8th Cir. 1999) (R. Arnold, J.). That concept of standing, which as the Supreme Court has explained is really an issue of "contract interpretation" that goes to the merits of a claim, *Perry v. Thomas*, 482 U.S. 483, 492 (1987), is "entirely distinct from 'standing' for purposes of Article III." *Novartis Seeds*, 190 F.3d at 871 (noting that the argument that plaintiff did not have right to enforce license agreement because of an assignment did not go to jurisdiction); *see also Perry*, 482 U.S. at 487, 492 (explaining that a contention that plaintiffs "were 'not parties' to [an] . . . agreement" did not raise an issue of jurisdictional standing); *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 850–51 (10th Cir. 2015) (rejecting attempt to classify question whether nonparties to an insurance agreement could invoke waiver and estoppel against insurance company as question of jurisdictional standing).

To have that Article III standing, a plaintiff must allege that it has been injured, that the defendant caused the injury, and that the requested relief will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The Cottons' claim against Underwriters seems to meet that constitutional requirement. They own the properties that Underwriters insured against a flood risk. Underwriters has refused to pay additional amounts allegedly owed under the insurance policy. A ruling against Underwriters would, at least indirectly, compensate the Cottons. Indeed, the initial payments Underwriters made on the flood policy before suit inured to the Cottons' benefit when First American credited those payments against the Cottons' loan balance. We thus

do not view the fact that the Cottons were not a named insured in the policy covering property they owned as a defect that goes to Article III standing.

We recognize, however, that *Williams v. Certain Underwriters at Lloyd's of London*, 398 F. App'x 44 (5th Cir. 2010), treated a similar problem as one of constitutional standing.  But in addition to being nonprecedential, *Williams* predated a more recent Supreme Court case that reiterated that "the question whether a plaintiff states a claim for relief 'goes to the merits' in the typical case, not the justiciability of a dispute, and conflation of the two concepts can cause confusion."  *See Bond v. United States*, 564 U.S. 211, 219 (2011) (citation omitted).  Contrary to that clarification, *Williams* based its "no standing" holding on a Louisiana case that treated the issue as one of failure to state a claim.  *See* 398 F. App'x at 47 (citing *Joseph v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary*, 939 So. 2d 1206, 1215 (La. 2006) (finding that the alleged breach of a contract between a hospital and a medical corporation did not create a cause of action in favor of individual doctors affiliated with the medical corporation because the contract did not create a stipulation *pour autrui* in favor of the doctors)).

In light of *Williams*, however, we will also explain why, even if the Cottons lacked constitutional "standing" to bring a claim against Underwriters under the flood policy, there was still subject matter jurisdiction over this case that authorized the district court to grant the Cottons' request to amend their pleadings by adding an additional plaintiff.  The reason is the jurisdiction that undoubtedly existed over the Cottons' claim against Scottsdale which was still pending when amendment was sought.  That makes this case much different from those in which we have disallowed amendment because jurisdiction was lacking over the entire case from its inception.  In *Summit Office Park, Inc. v. United States Steel Corp.,* 639 F.2d 1278, 1279–80 (5th Cir. 1981), for example, indirect purchasers of reinforced steel bars brought antitrust claims.  When an

intervening Supreme Court decision held that indirect purchasers such as Summit had no standing under the antitrust laws, the district court refused to allow the plaintiff to amend its complaint to substitute two direct purchasers as plaintiffs. *Id.* at 1280. We affirmed, explaining that because "there was no plaintiff before the court with a valid cause of action, there was no proper party available to amend the complaint." *Id.* at 1282. In contrast, the diversity suit between the Cottons and Scottsdale vested the court with jurisdiction to rule on the motion to amend the complaint adding First American's claim against Underwriters. *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL 4899455, at *3 (E.D. La. Nov. 12, 2008) (finding that because a first amended complaint set forth sufficient allegations to establish standing as to several of the original plaintiffs, those plaintiffs had standing to amend the complaint in order to add additional plaintiffs, defendants, and claims).

## II.

Fully satisfied with the district court's jurisdiction to allow the filing of the complaint adding First American's claim that was tried against Underwriters, we turn now to Underwriters' other arguments.

We hold that First American's claim was timely. The policy provides that suit must be filed within twelve months from the date Underwriters mailed the insured notice of a claim denial. Underwriters asserts it never received a supplemental proof-of-loss claim. That means the earliest Underwriters could have denied the claim was when it filed its May 2015 answer to the second amended complaint.

We also find that there was adequate evidence to support the jury's findings that Underwriters received satisfactory proof of loss to support First American's claim for additional recovery. Louisiana's requirements for proofs of loss are flexible, focusing on notice. *Anco Insulations, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 787 F.3d 276, 286 (5th Cir. 2015) (noting in its

interpretation of Louisiana satisfactory proof of loss law that "[s]o long as the insurer obtains sufficient information to act on the claim, the manner in which it obtains the information is immaterial"); *La. Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1119–20 (La. 2008) ("[P]roof of loss is a flexible requirement to advise an insurer of the facts of the claim, and . . . it need not be in any formal style.") (internal quotation marks omitted).  The jury was entitled to find that sufficient notice in the proof of loss forms and repair estimates an adjuster faxed to Underwriters.  The forms provided a calculation for the claimed damages that included information such as the actual cash value of the structure, the cost of the repairs or replacement, and the applicable depreciation.  The repair estimates contained a detailed itemization of the repairs needed for each property.  The jury was entitled to find those forms to provide sufficient notice.

The jury also had sufficient evidence from which to conclude that Underwriters' presuit payments were inadequate to repair the properties to their pre-Hurricane Isaac condition.  Underwriters suggests that it is only required to pay "the Actual Cash Value of the *damage*" to the property, which it contends is the cost of repairing the damage less depreciation.  This a blatant misreading of its own policy.  The policy provides that First American is insured up to the lesser of "[t]he actual cash value . . . *of the property* . . ." or "[t]he amount it would cost to repair or replace the property . . . ." (emphasis added).  That latter amount focusing on the cost of repair, which in this case was lower than the value of the entire property, was thus a proper basis on which the jury could calculate the amount owed on the policy.

**\* \* \***

The judgment is AFFIRMED.