**Hakan LANS, Plaintiff,**

v.

**GATEWAY 2000, INC., Defendant.**

**No. CIV.A. 97–2523(JGP).**

United States District Court,
District of Columbia.

Nov. 23, 1999.

Louis S. Mastriani, Steven E. Adkins, Adduci, Mastriani & Schaumberg, L.L.P., Washington, DC, for Hakan Lans, plaintiff.

Robert A. Berger, Robert M. Rader, Winston & Strawn, Washington, DC, Martin L. Lagod, Gary H. Ritchey and Michele E. Moreland, Pro Hac Vice, for Gateway 2000, Inc., defendant.

## MEMORANDUM

PENN, District Judge.

This matter is before the Court on plaintiff's **Motion for Leave to File a First Amended Complaint Substituting Uniboard Aktiebolag for Hakan Lans as Plaintiff and defendant's Motion for** Summary Judgment due to Lack of Standing. For the reasons set forth below, plaintiff's motion for leave to file a first Amended Complaint substituting plaintiffs is denied and defendant's motion for summary judgment is granted.

## BACKGROUND

Plaintiff Hakan Lans ("Lans") was issued the patent[1] which is the subject of this infringement suit on December 1, 1981. *See* Declaration of Hakan Lans ("Lans Decl.") at ¶ 2. In 1996 Lans advised defendant, as well as several other technology companies, of alleged infringements of United States Patent No. 4,303,986 (" '986 patent"). When defendant failed to refrain from the alleged infringement, as well as compensate him for it, Lans commenced the present action in his own name on October 24, 1997.

During the normal course of discovery, defendant discovered that, on October 19, 1989, Lans had executed an "Assignment and Declaration" in which he

sold, assigned and transferred to Uniboard Aktiebolag ("Uniboard" or "Uniboard AB")[2], a Swedish corporation, all [his] right, title and interest in and to United States Patent No. 4,303,986 and all patents and patent applications of other countries corresponding to said United States patent, together with the right to sue third parties in respect of any infringement of any of said patents and patent applications which infringement has occurred prior to the date of this assignment. [Furthermore] the said Uniboard Aktiebolag is now the sole owner of said United States patent and

1. United States Patent No. 4,303,986 (" '986 patent"), entitled "Data Processing System and Apparatus for Color Graphics Display." Among other things, the inventions covered by this patent optimize and accelerate the performance of color graphics subsystems in contemporary computers. *See* Complaint at ¶ 7. The '986 patent was filed on January 9, 1979, and was issued on December 1, 1981 by the United States Patent and Trademark Office. *Id.* According to Lans, the '986 patent expired on January 8, 1999. *See* Opposition of Plaintiff Hakan Lans to Defendants' Joint Motion for Entry of Protective Order at 4 (footnote 5)(filed Jan. 11, 1999).

2. According to Lans, he has been the managing director and sole shareholder of Uniboard since 1985. *See* Lans Decl. at ¶ 3.

said patents and patent applications of other countries corresponding thereto.

Assignment and Declaration (attached to Plaintiff Hakan Lans' Motion for Leave to File a First Amended Complaint Substituting Uniboard Aktiebolag for Hakan Lans as Plaintiff ("Lans Motion for Leave to Amend")(filed Aug. 24, 1999)).[3]

Prior to filing his motion for leave to amend by substituting plaintiffs, Lans had denied that the '986 patent had ever been assigned. Lans's original complaint made no mention of Uniboard or any assignment. During discovery, Lans appeared to resist disclosing any information that would cast doubt on his status as patentee. For example, in response to an interrogatory filed in a related case,[4] Lans declared that "[t]here has been no assignment of the '986 patent." Hakan Lans' Responses to Compaq Computer Corporation's First Set of Interrogatories as adopted by Gateway 2000, Inc. (attached to Opposition of Defendant Gateway 2000, Inc. to Plaintiff Hakan Lans' Motion for a Recommendation to Modify the Joint Discovery Order (filed Sept. 10, 1999)) at 8. Furthermore, that same interrogatory response indicates that Lans was the party licensing the patent to IBM, when in fact Uniboard was the licensor in the transaction. *Id.*

Apparently, even when confronted with defendant's repeated discovery requests surrounding any assignment, Lans neglected to inform even his attorneys that an assignment had taken place. *See* Declaration of Louis S. Mastriani in Support of Emergency Motion for Extension of Time to Respond to Motions by Gateway ("Mastriani Decl.")(dated Aug. 13, 1999) at ¶ 3("Inasmuch as I and other counsel to Mr. Lans have been repeatedly informed by Mr. Lans that no assignment had ever taken place with respect to the ['986] patent…"). Finally, after being confronted by defendant with a copy of the assignment, "Lans recalled that he had signed the document approximately ten years ago in the context of granting a license to IBM under the Lans patent. As such, Mr. Lans now understands that the patent is owned by his wholly-owned company, Uniboard." Lans Motion for Leave to Amend at 3.[5]

As a result of the assignment, Lans is now asking the Court for leave to amend his complaint to substitute Uniboard as the plaintiff. Defendant alleges that since Lans is not the owner of the patent, he has no standing to sue for its infringement or to motion to substitute parties. Defendant has asked the Court to grant summary judgment against Lans due to a lack of standing.[6]

3. Lans made the assignment to Uniboard as part of a licensing agreement with International Business Machines Corporation ("IBM"). Once presented with a subpoena from defendant, IBM provided defendant a copy of the assignment. Defendant then provided Lans with a copy of the assignment, the veracity of which Lans has not challenged.

4. The present case is one of eight related cases currently pending. The referenced interrogatory was filed in *Lans v. Compaq Computer Corp.*, No. 97–2527 (D.D.C. filed Oct. 24, 1997). The six other related cases are *Lans v. Digital Equipment Corp.*, No. 97–2493 (D.D.C. filed Oct. 24, 1997); *Lans v. Hewlett–Packard Co.*, No. 97–2524 (D.D.C. filed Oct. 24, 1997); *Lans v. Packard Bell NEC, Inc.*, No. 97–2525 (D.D.C. filed Oct. 24, 1997); *Lans v. Dell Computer Corp.*, No. 97–2526 (D.D.C. filed Oct. 24, 1997); *Lans v. Acer America Corp.*, No. 97–2528 (D.D.C. filed Oct. 24, 1997); and *Lans v. AST Research, Inc.*, No. 97–2529

(D.D.C. filed Oct. 24, 1997). Two other related suits, *Lans v. Olsy North America*, No. 97–2530 (D.D.C. filed Oct. 24, 1997), and *Lans v. Siemens Nixdorf Info.*, No. 98–0050 (D.D.C. filed Jan. 9, 1998), have been previously dismissed.

5. The Court notes that it has already felt compelled to order Lans to make a definitive statement regarding the ownership of the '986 patent. In response to an emergency motion for an extension of time to respond to defendant's motion for summary judgment, the Court conditioned the extension on Lans filing "an affidavit stating in clear unambiguous language stating whether he did execute the [assignment]." Order of the Court (dated Aug. 16, 1999) at 2.

6. The Court notes that any defect in standing creates a defect in subject matter jurisdiction, necessitating dismissal under Federal Rule of

## DISCUSSION

### I.

The Court begins with Lans's motion to substitute Uniboard as plaintiff. Lans relies on two provisions of the Federal Rules of Civil Procedure to support his motion. Lans relies on Federal Rule of Civil Procedure 15(a) ("Rule 15(a)"), which generally prescribes that leave to amend a complaint will be granted freely when justice so requires. Lans also relies on Federal Rule of Civil Procedure 17(a) ("Rule 17(a)"), which requires all civil suits in federal court to be brought in the name of the real party in interest and provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification ... by, or joinder or substitution of, the real party in interest." The Court will consider each of these arguments in turn.

### A.

Rule 15(a) provides that once a responsive paper has been filed, a party may amend the pleading only with leave of the court or with the written consent of the adverse party.

> [The] grant or denial of an opportunity to amend is within the discretion of the district court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). *See also* 3 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 15.14[2] (3d ed. 1999)("*Moore's* ")("Under [*Foman,*] it is an abuse of discretion if the district court refuses to grant leave to amend without giving any reason.").

Civil Procedure 12(b)(1). *See Haase v. Sessions,* 266 U.S.App.D.C. 325, 329, 835 F.2d 902, 906 (1987)(citing *Bender v. Williamsport*

It is established that a plaintiff is required to plead jurisdiction in the complaint. *See* Fed.R.Civ.P. 8. Federal law provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653 (1994). Courts have generally freely given plaintiffs leave to amend pleadings in order to amend jurisdictional allegations, provided that jurisdiction actually exists. *See Stafford v. Mobil Oil Corp.,* 945 F.2d 803, 806 (5th Cir.1991) (party may amend to make complete statement of jurisdiction, but when jurisdiction does not exist it may not be cured by amendment); *see also Odishelidze v. Aetna Life & Casualty Co.,* 853 F.2d 21, 24–25 (1st Cir.1988) (citing *Moore's,* amendment allowed when jurisdiction existed, but defectively plead). Additionally, a plaintiff may amend jurisdictional allegations to show that jurisdiction does in fact exist. *Moore's* at ¶ 15.14[3]. Therefore, if Lans were merely trying to cure a defective jurisdictional allegation, the Court would freely grant leave to amend.

But Lans seeks to do more than this. Lans's proposed amendment is not intended to simply correct a defective jurisdictional allegation. Lans seeks to retroactively create jurisdiction by substituting Uniboard, the apparent current owner of the patent and thus the only party with standing to sue for its infringement, as the plaintiff. The Court adopts the rule that a "plaintiff may not amend the complaint to substitute a new plaintiff in order to cure a lack of jurisdiction, because a plaintiff may not create jurisdiction by amendment when none exists." *Moore's* at ¶ 15.14[3]. Courts construing § 1653 have held that while that statute provides a method for curing defective allegations of jurisdiction, "it is not to be used to create jurisdiction retroactively where it did not exist." *Aetna Casualty & Surety Co. v. Hillman,* 796 F.2d 770, 775 (5th Cir.1986). The Second

*Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986)).

Circuit has stated that "the longstanding and clear rule is that 'if jurisdiction is lacking at the commencement of [a] suit, it cannot be aided by [adding] a [plaintiff] with a sufficient claim.'" *Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889, 893 (2d Cir.1983)(citing *Pianta v. H.M. Reich Co.*, 77 F.2d 888, 890 (2d Cir. 1935)).

In his reply to defendant's opposition to the motion for leave to amend, Lans tries to distinguish *Pressroom* from the case at hand by comparing the errors of the plaintiffs in both cases. Lans states that the jurisdictional defect in *Pressroom* was created because the plaintiff in that case, a pension fund, was not legally entitled to bring a cause of action under the Employee Retirement Income Security Act ("ERISA") since ERISA did not give such funds the right to sue under that statute. Basically, ERISA does not confer standing on any such funds to sue. Lans distinguishes his own status by stating that his own "error [is] not that a patentee does not have a cause of action [under the patent laws], but that Lans as an individual is not the patentee." Reply of Hakan Lans to Opposition of Defendant Gateway 2000, Inc. to Motion of Plaintiff Hakan Lans to File a First Amended Complaint Substituting Uniboard Aktiebolag for Hakan Lans as Plaintiff ("Lans Reply")(filed Sept. 14, 1999) at 13. This distinction rings a bit hollow. The cases are parallel in that both plaintiffs lack the requisite standing to be before their respective courts at the outset of their respective suits: the *Pressroom* plaintiffs lacked standing because ERISA does not confer standing on pension funds, and, similarly, Lans lacks standing because patent law does not confer standing to sue for infringement on anyone other than the patentee. In both cases the named plaintiff is without standing, and without standing, the court lacks jurisdiction.

■ The parties spend significant time arguing over the applicability of *Summit Office Park, Inc. v. United States Steel Corp.*, 639 F.2d 1278 (5th Cir.1981). In *Summit Office Park*, the named plaintiff brought an antitrust suit against numerous steel companies for violations of the Sherman and Clayton Acts. Due to an intervening Supreme Court opinion, plaintiff was left without standing to bring the antitrust claim. The district court dismissed the claims on the basis of that recent Supreme Court decision. "In its order of dismissal the district court also struck an amended complaint which attempted to substitute for the dismissed plaintiff Summit, two direct purchasers ... as parties plaintiff and as representative of a new and different class of direct purchasers." *Summit Office Park*, 639 F.2d at 1280. The district court reasoned that since the original plaintiff had no standing to be before the court, there was no action for the proposed plaintiffs to join in. The Fifth Circuit affirmed, holding that "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." *Summit Office Park*, 639 F.2d at 1282. Furthermore, "[s]ince Summit had no standing to assert a claim, it was without power to amend the complaint so as to initiate a new lawsuit with new plaintiffs and a new cause of action." *Id.* The Court finds the reasoning in *Summit Office Park* persuasive, and thus adopts its holding to the extent that when a plaintiff never had standing to assert a claim against the defendant, plaintiff may not substitute a new plaintiff, a new defendant, or a new claim for the purpose of creating jurisdiction. *See also Moore's* at ¶ 15.14[3].

It should be understood that the Court's opinion today is not meant to limit the ability of parties properly before the Court to freely amend pleadings under Rule 15(a). However, if a plaintiff lacks standing to be before the court from the time of the filing of the original complaint, there is no action for him to amend, since the court is deprived of subject matter jurisdiction

over the entire matter. The Court believes that this outcome is "consistent with the purpose of Rule 15(a) since the intent of the rule is to assist the disposition of litigation on the merits of the case rather than have pleadings become ends in themselves." *Summit Office Park*, 639 F.2d at 1284. Furthermore, the *Summit Office Park* court found that none of the plaintiffs involved would be prejudiced. "Summit had no case left to assert. As for [the purported new plaintiffs], their claims could be asserted and rights protected by filing a new lawsuit in the proper forum, rather than by attempting to participate in the original litigation." *Summit Office Park*, 639 F.2d at 1284. The Court finds that Lans and Uniboard are in similar positions as the plaintiffs in *Summit Office Park*. Lans has no case left to assert, and as for Uniboard, it remains free, as always, to file an appropriate suit against any parties it believes violated the '986 patent. The Court therefore denies plaintiff's motion to amend his complaint based on Rule 15(a).

### B.

The plaintiff also relies on Rule 17(a) as grounds for leave to amend. That rule, in relevant part, states:

> Every action shall be prosecuted in the name of the real party in interest.... No action shall be ·dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed.R.Civ.P. 17(a).

All civil actions in federal court must be asserted in the name of the real party in interest, which is generally the person or entity "possessing the right or interest to be enforced through the litigation."

*Moore's* at ¶ 17.10[1]. "The right to enforce an action is conferred by substantive law or by statutes designating as real parties representatives of one holding substantive rights. If state or federal substantive law confers on one an enforceable right, that party is a real party in interest with respect to that right or interest." *Id.*

"Standing and real party in interest questions do overlap to the extent that both ask whether the plaintiff has a personal interest in the controversy." *Whelan v. Abell*, 293 U.S.App.D.C. 267, 953 F.2d 663 (1992)(citing 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1524, at 329–30 (2d ed. 1990)("Wright & Miller")). Plaintiff relies heavily on *Whelan* to support his notion that the proposed amendment should be allowed as a substitution of the real party in interest, rather than an attempt to avoid dismissal by creating jurisdiction.

In *Whelan*, the principals of a corporation brought suit in their individual capacities against some investors. The investors had previously sued the Whelans, who were major investors and senior officers of the corporation in question, "alleging mail and wire fraud, securities fraud, franchise law violations, and racketeering." *Whelan*, 293 U.S.App.D.C. at 271, 953 F.2d at 666–67. That action was eventually dismissed by the trial judge. After the dismissal, the Whelans then "turned round and sued [the investors], charging [them] with tortious interference with prospective business advantage, breach of fiduciary duty, wrongful involvement in litigation, abuse of process, and malicious prosecution." *Whelan*, 293 U.S.App.D.C. at 271, 953 F.2d at 667. Without belaboring the outcome of all the various claims, on the first day of trial, the defendants "moved to bar any testimony concerning the lost value of the Whelans' investments·in the corporation on the ground that only the corporation itself could recover for such loss." *Whelan*, 293 U.S.App.D.C. at 272, 953 F.2d at 668. The trial judge subsequently ruled

"that the Whelans could not recover damages for the lost value of their investments in the corporation, and [also directed a verdict for the defendants] on the Whelans' breach of fiduciary duty claim." *Whelan,* 293 U.S.App.D.C. at 275, 953 F.2d at 671. The trial judge also denied a motion by the plaintiffs to join the corporation, the real party in interest as to the lost value of the corporation, as a plaintiff.

The D.C. Circuit, reviewing these determinations, upheld the directed verdict "because under D.C. law, an attorney's fiduciary duty is owed to the company, not the shareholders." *Whelan,* 293 U.S.App.D.C. at 275, 953 F.2d at 671. However, the court of appeals ruled that the district court had abused its discretion by considering the real party in interest objection so late in the proceedings. *Whelan,* 293 U.S.App.D.C. at 276, 953 F.2d at 671. Since Rule 17(a) required that plaintiffs be given a reasonable amount of time to correct a real party in interest defect, the court held that "judges abuse their discretion in allowing a plea as late as the start of the trial if the real party has been prejudiced by the defendant's laxness." *Whelan,* 293 U.S.App.D.C. at 276, 953 F.2d at 672. Since the defendants did not raise the objection until the beginning of trial, the corporation did not have time to ratify the lawsuit, especially since by that time the corporation was in the hands of a bankruptcy trustee. *See Whelan,* 293 U.S.App.D.C. at 277, 953 F.2d at 672–73. The court of appeals ruled that defendants had effectively waived their right to bring the real party in interest objection by waiting until the first day of trial.

Since the court found that the district judge had abused his discretion by considering the real party in interest objection on the first day of trial, the court of appeals never reached any conclusion about whether the Whelans could actually bring the corporation in as a plaintiff through ratification, joinder or substitution. "In light of this disposition, we need not reach the other issues raised by appellants re-

garding the district court's decision to deny various attempts to make the corporation a plaintiff." *Whelan,* 293 U.S.App. D.C. at 277, 953 F.2d at 673 n. 8. Since that is precisely the issue before the Court in the present case, the value of *Whelan* as precedent in this case is questionable. Although *Whelan* recognizes that standing and real party in interest issues might overlap, that case cannot be read to mandate that a plaintiff lacking standing to be before the court must, or even should, be given leave to amend his complaint to substitute in a real party in interest in order to create jurisdiction.

Furthermore, the situation presented in *Whelan* is clearly distinguishable from the facts currently before the Court. First, Lans has made no allegation that defendant's standing objection was not raised in a timely manner. Defendant moved for summary judgment in a timely fashion after receiving confirmation of the assignment to Uniboard. Second, the Whelans had standing to be before the court on other claims brought concurrently with the claims for breach of fiduciary duty and lost value. In the present case, Lans has no standing to be before the Court on any aspect of this matter.

Lans also relies heavily on the case of *Link Aviation, Inc. v. Downs,* 117 U.S.App.D.C. 40, 325 F.2d 613 (1963), as support for his Rule 17(a) argument. In *Link Aviation,* plaintiffs were alleging the negligent damaging by defendant of an airplane belonging to the plaintiffs. Before filing suit, the plaintiffs were reimbursed by their insurers, so that "prior to the filing of the suit the insurers became subrogated to all rights and remedies of the original plaintiffs." *Link Aviation,* 117 U.S.App.D.C. at 40, 325 F.2d at 613. The district court subsequently denied a motion to substitute the insurers for the originally named plaintiffs. The court of appeals reversed this determination and remanded for further proceedings.

The *Link Aviation* court began by noting that both parties agreed that the "orig-

inal action should have been brought in [the name of the insurers] rather than in the name of the insureds, who filed the complaint." *Link Aviation,* 117 U.S.App. D.C. at 41, 325 F.2d at 614. The defendants argued that since the insureds were not the real party in interest, the filing of their original complaint had no effect, and that the insurers, therefore, had no claim before the date of the filing of the amended complaint. The court of appeals disagreed with this argument, holding "that the suit must be construed as having been brought by the insureds for the use of the insurers who had then become subrogated to the rights of the nominal plaintiffs." *Link Aviation,* 117 U.S.App.D.C. at 41, 325 F.2d at 614. The court went on to describe the relationship between the insureds and the insurers with respect to the litigation against the defendant. "Plaintiffs ... were not suing for double recovery but to recover for the insurers what the latter had paid." *Id.* On this ground, the court of appeals allowed substitution of the real party in interest.

*Link Aviation* then is clearly distinguishable from this case. The most apparent distinction is that Uniboard's interest in recovering for the infringement of patents it owns exists completely independently from Lans, unlike the claim in *Link Aviation,* which the insurers could only pursue "through" the insureds. While plaintiff would have the Court analogize Lans's status to that of the insureds in *Link Aviation,* the Court holds that both the assignor/assignee and the sole shareholder/corporation relationships present in this case are not parallel to the insured/insurer relationship in *Link Aviation.*

The Court has also considered the general policy behind the relevant portion of Rule 17(a). The provision of Rule 17(a) which provides that no action shall be dismissed without allowing reasonable time for the ratification, joinder or substitution of the real party in interest was added in a 1966 amendment. The Advisory Committee provided some insight into the reason for the new rule. The full text of the Advisory Committee's notes on the relevant provision is provided:

The provision that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed, after the objection has been raised, for ratification, substitution, etc., is added simply in the interests of justice. In its origin the rule concerning the real party in interest was permissive in purpose: it was designed to allow an assignee to sue in his own name. That having been accomplished, the modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.

This provision keeps pace with the law as it is actually developing. Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed—in both maritime and nonmaritime cases. *See Levinson v. Deupree,* 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed.2d 1319 (1953); *Link Aviation, Inc. v. Downs,* 325 F.2d 613 (D.C.Cir.1963). The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made. It does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have the benefit of suspension of the limitation period. It does not even mean, when an action is filed by the personal repre-

sentative of John Smith, of Buffalo, in the good faith belief that he was aboard the flight, that upon discovery that Smith is alive and well, having missed the fatal flight, the representative of James Brown, of San Francisco, an actual victim, can be substituted to take advantage of the suspension of the limitation period. It is, in cases of this sort, intended to insure against forfeiture and injustice—in short, to codify in broad terms the salutary principle of *Levinson v. Deupree,* 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed.2d 1319 (1953), and *Link Aviation, Inc. v. Downs,* 325 F.2d 613 (D.C.Cir.1963).

Fed.R.Civ.P. 17 advisory committee's notes on 1966 Amendment.

▮ This background is particularly instructive in this case. As the Court understands this guidance, it is appropriate to liberally grant leave to substitute a real party in interest when there has been an honest mistake in choosing the nominal plaintiff, meaning that determination of the proper party was somehow difficult at the time of the filing of the suit, or that the mistake is otherwise understandable. "[I]t is evident that Rule 17(a) should not be applied blindly to permit substitution of the real party in interest in every case.... Plaintiff must first establish that when he brought [the] action in his own name, he did so as the result of an honest and understandable mistake." *Feist v. Consolidated Freightways Corp.,* 1999 WL 178360, *2, 1999 U.S. Dist. LEXIS 3751, *6–7 (E.D.Pa.1999). The Court adopts this "honest and understandable mistake" test for evaluating Lans's Rule 17(a) motion.

Lans's reason for not bringing this action in the name of Uniboard in the first place is that he simply forgot that he had made the assignment to Uniboard. *See* Lans Decl. at ¶ 11. The Court finds the case of *Automated Information Process-*

*ing, Inc. v. Genesys Solutions Group, Inc.,* 164 F.R.D. 1 (E.D.N.Y.1995)("*AIP*"), instructive on this point. In *AIP*, a corporation brought action against a former joint venturer for copyright infringement, breach of contract, and unfair competition. It was subsequently discovered that the corporation had been dissolved eleven years earlier, but that the dissolved corporation had assigned its rights to a new corporation. The district court denied a motion to substitute the new corporation as the real party in interest. Plaintiffs had relied on the provisions of Rule 15 and Rule 17(a) which speak of allowing substitution when justice required. However, the court found that

> [n]othing about the situation here suggests that justice requires the relief the 'new' plaintiffs seek. The information concerning A.I.P., Inc.'s non-existence was certainly within [plaintiff's] responsibility and ability to ascertain.... [It] is of course a party's obligation to conduct reasonable inquiry concerning the truth of the allegation made in its pleadings.

*AIP*, 164 F.R.D. at 3.

The court noted that plaintiff failed to submit any information to support the reasonableness of the nominal plaintiff's mistake that the old corporation was still in existence. The court concluded that "justice would not be served if the plaintiffs were rewarded for their failures, oversights and misrepresentations by permitting an amendment of their pleadings...." *AIP*, 164 F.R.D. at 3.

The Court finds the present case to be very similar. Lans executed the assignment to Uniboard almost a decade before initiating this action against defendant. The information concerning the assignment was solely in the control of Lans and Uniboard. The Court assumes that any inventor would keep a record of the assignment of such a valuable patent.[7]

---

7. Lans contends that he never had possession or custody of the Assignment and Declaration.

*See* Lans Decl. at ¶ 10. The Court is skeptical of this assertion. First, Lans executed the

The Court also notes that the transaction underlying the assignment of the patent from Lans to Uniboard was not an inconsequential one. According to the licensing agreement between Uniboard and IBM, the licensing of the patent was worth at least $1,500,000. *See* Agreement between International Business Machines Corporation and Uniboard Aktiebolag ("IBM–Uniboard Agreement") at § 6 (attached to Declaration of Gary H. Ritchey in Support of Opposition of Defendant Gateway 2000, Inc. to Motion of Plaintiff Hakan Lans for Leave to File a First Amended Complaint Substituting Uniboard Aktiebolag for Hakan Lans as Plaintiff ("Ritchey Decl.")(attached to Opposition of Gateway 2000, Inc. to Motion of Plaintiff Hakan Lans for Leave to File a First Amended Complaint Substituting Uniboard Aktiebolag for Hakan Lans as Plaintiff ("Gateway Opposition")(filed Sept. 7, 1999))). The lawyer who handled the licensing negotiations for IBM has stated that the decision to license the patent through Uniboard instead of Lans was a carefully considered one.

> During [our final meeting] Mr. Lans and his attorney, Mr. Berg, indicated that they had concluded that to minimize the tax burden, the licensing entity would be Uniboard AB. Based on my observations, the decisions by Mr. Lans and his counsel that Uniboard AB would be the licensing entity appeared to be an im-

portant and thoroughly considered business decision.

Declaration of Peter N. Evans in Support of Opposition of Defendant Gateway 2000, Inc. to Motion of Plaintiff Hakan Lans for Leave to File a First Amended Complaint Substituting Uniboard Aktiebolag for Hakan Lans as Plaintiff ("Evans Decl.")(attached to Gateway Opposition (filed Sept. 7, 1999)) at ¶ 6.[8]

Lans has also stated that he believed the assignment was invalid. He states that "[a]fter I signed [the] Assignment and Declaration, it became my understanding that the assignment was invalid because of pending litigation in Germany with respect to the [patent]." Lans Decl. at ¶ 7; *see also* Lans. Decl. at ¶¶ 8, 9. The Court notes, however, that $500,000 of IBM's payment to Uniboard was conditional on Germany's Patent Court settling that litigation. *See* IBM–Uniboard Agreement at § 6.2. IBM's attorney subsequently stated that "I received a copy of a letter dated February 25, 1990, signed by Mr. Lans on behalf of Uniboard AB, representing that the condition for an additional payment of $500,000 had been satisfied and requesting payment." Evans Decl. at ¶ 11. The Court does not understand why Lans informed IBM that the condition for payment was satisfied if he thought that the German litigation had invalidated the patent. Lans offers no contemporaneous evi-

---

Assignment. Second, Uniboard, the corporation of which he is sole shareholder and managing director, received the Assignment, and compensated him for the transfer. Finally, Lans, as the sole shareholder of Uniboard, received financial benefit from the license to IBM, which was contingent on the Assignment. Lans alleges that the Assignment was in the possession of a former attorney, but that he died in March 1997. Second Declaration of Hakan Lans ("Second Lans Decl.") at ¶ 5 (attached to Reply of Hakan Lans to Opposition of Defendant Gateway 2000, Inc. to Motion of Plaintiff Hakan Lans for Leave to File a First Amended Complaint Substituting Uniboard Aktiebolag for Hakan Lans as Plaintiff ("Lans Reply")(filed Sept. 14, 1999)). While the attorney's death is unfortunate, it does not abrogate plaintiff's responsibility to

have conducted reasonable inquiry to confirm his ownership of the patent before filing a complaint.

8. In a second declaration, Lans states that "[s]ince I am the only shareholder of Uniboard, it has never been a matter of concern to me, other than for tax purposes, whether I or Uniboard was the owner of the patent." Second Lans Decl. at ¶ 3. The Court believes that is precisely the point. Since Lans was clear on the distinction between himself and the corporation when it came to the tax benefits of having Uniboard handle the licensing of the patent to IBM, he was on notice that the distinction carried over to other aspects of the patent, such as which party could properly sue for its infringement.

dence that he believed the assignment was invalid before the present declaration in support of his motion to substitute. For example, there is no record that either Uniboard or Lans ever informed IBM of any doubts as to the assignment's validity. *See* Evans Decl. at ¶ 12.

The Court is unable to reach the conclusion that failure to sue in the name of Uniboard was an honest and understandable mistake. Lans argues simultaneously that he both forgot that he had made the assignment and that he thought the assignment was invalid—the Court finds this dual position untenable. Lans was in control of all the information regarding the assignment since it was executed. As previously noted, Lans was able to inform his attorneys of the license to IBM, but then appears to have conveniently forgotten the assignment to Uniboard, which was a vital aspect of that transaction. Prior to the declaration in support of his motion to amend, Lans never expressed any doubts as to the assignment's validity. In any event, it was entirely within Lans's ability to verify the validity of the assignment, establish ownership of the patent, and sue in the name of the proper plaintiff. When Lans's attorneys inquired as to whether he had made any assignments of the patent, Lans should have told them about the assignment to IBM and his belief that the assignment was invalid. If he had done that, counsel might have proceeded differently, and avoided this present situation. The Court cannot escape the conclusion

that Lans chose to conceal all information about the assignment, possibly even from his attorneys, until confronted with irrefutable evidence that the assignment had occurred. Therefore, the Court cannot hold that Lans's failure to join or sue in the name of Uniboard was an honest and understandable mistake.[9] Due to this determination, Lans's motion to amend based on Rule 17(a) is denied.

## II.

The Court now turns its attention to defendant's motion for summary judgment due to plaintiff's lack of standing. "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Article III." *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). As the Supreme Court has noted, "[a]s an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial power *on his behalf.*" *Warth,* 422 U.S. at 498–99, 95 S.Ct. at 2205 (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)(emphasis provided)).

Aside from this basic constitutional consideration, the Supreme Court has recognized other limitations on the types of persons who may invoke the jurisdiction of the federal courts. For example, the Su-

---

9. Interestingly enough, the parties are not even in agreement that Uniboard is the real party in interest. Defendant alleges that Lans assigned the patent to an investor group before executing the assignment to Uniboard. *See* Gateway Opposition (filed Sept. 7, 1999) at 15. Defendant wonders aloud if perhaps this previous assignment is the reason Lans thought his assignment to Uniboard was invalid. The Court has not reached a conclusion as to whether Uniboard is the real party in interest. The Court notes, with some frustration, that Lans has not been particularly forthcoming in providing discovery which would settle the issue once and for all. For example, plaintiff has declined to respond to

at least four different interrogatories or requests to produce documents regarding the investor group. *See* Ritchey Decl., Exh. J (Nos. 3/15 and 10/34), Exh. K (Nos.6, 12, 13). However, in his second declaration, Lans states that the investors in question "have never had an ownership interest in the Lans Patent and were only entitled to a portion of the licensing income in return for their investment." Second Lans Decl. at ¶ 11. Unfortunately, Lans proffers no evidence to support his assertion regarding the status of the investor group, so the Court is unable to conclude that Uniboard is, in fact, the proper real party in interest.

preme Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim on the legal rights and interests of third parties." *Warth,* 422 U.S. at 499, 95 S.Ct. at 2206. The standing question, therefore, is "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting [plaintiff] a right to judicial relief." *Warth,* 422 U.S. at 500, 95 S.Ct. at 2206.

 The issue of whether Lans has standing to bring this action is governed by the law of patents. It is well-settled that the right to sue for patent infringement belongs solely to the party that has legal title to the patent. *See Mas–Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206, 1210 (Fed.Cir.1998); *Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.,* 52 F.3d 1026, 1030 (Fed.Cir.1995); *Herman v. William Brooks Shoe Company,* 886 F.Supp. 385, 386 (S.D.N.Y.1995); *RAD Data Communications, Inc. v. Patton Electronics Co.,* 882 F.Supp. 351, 352 (S.D.N.Y.1995); *Pfizer Inc. v. Elan Pharmaceutical Research Corp.,* 812 F.Supp. 1352, 1355 (D.Del.1993); *Site Microsurgical Systems, Inc. v. Cooper Companies, Inc.,* 797 F.Supp. 333, 337 (D.Del.1992). Furthermore, this Court has already held that "in the event of a complete assignment of title to a patent only the assignee ... has standing to claim protection rights under the patent." *Gilson v. Republic of Ireland,* 606 F.Supp. 38, 41 (D.D.C.1984).

Turning now to the facts presently before the Court, it is clear that Hakan Lans, in his individual capacity, lacks the requisite standing to bring this claim against defendant. It is uncontested that in 1989 Lans assigned all title he had in the '986 patent to Uniboard. *See* Lans Motion for Leave to Amend at 3. Due to the assignment of the '986 patent, Lans, although the original patentee, has lost standing to sue on any infringement of the patent.[10] This lack of standing is a defect in the Court's jurisdiction over this case and thus mandates its dismissal.[11]

### CONCLUSION

For the reasons set forth in this memorandum, plaintiff's motion for leave to file a first Amended Complaint substituting plaintiffs is denied and defendant's motion for summary judgment is granted. An appropriate order accompanies this memorandum.

---

10. The Court notes that although Lans might be the managing director and sole shareholder of Uniboard, Lans and Uniboard are two distinct legal entities. "One of the more important and pervasive principles underlying corporations law is the 'entity theory.' This theory provides that a corporation is a separate entity, distinct from its corporate and non-corporate shareholders.... A corporation is an entity irrespective of, and entirely distinct from, the persons who own its stock, and it is well settled that all the shares in a corporation may be held by a single person and yet the corporation continue to exist; nor does the fact that one person owns all the stock, make him and the corporation one and the same person...." *Stamp v. Inamed Corp.,* 777 F.Supp. 623, 626 (N.D.Ill.1991) (citations omitted); *see generally* Fletcher Cyc. Corp. §§ 25, 25.10 (Perm. Ed.). Furthermore, the law generally does not allow the option of "reverse piercing" the corporate veil when it suits the corporation's owner. *See* Fletcher Cyc. Corp. § 41.70 (Perm. Ed.)("[The] better rule would seem to be that a person who has voluntarily adopted the corporate form to engage in business is precluded from asking courts to disregard that form merely because the person is disadvantaged by its use."). Finally, the issue of whether Lans would have standing to sue derivatively is not at issue here, since Lans has never sought to sue in his capacity as a shareholder.

11. For a fuller discussion of this issue, *see* Timothy R. DeWitt & Tamara S. Klein, *A Fatal Mistake: Lack of Standing at the Time of Filing a Patent Infringement Complaint Results in Dismissal with Prejudice,* 27 A.I.P.L.A. Q.J. 189 (1999).