UNIBOARD AKTIEBOLAG, Plaintiff,

v.

ACER AMERICA CORP.,
et al., Defendants.

No. Civ.A. 99–3153 (JGP).

United States District Court,
District of Columbia.

Aug. 31, 2000.

Louis S. Mastriani, Adduci, Mastriani & Schaumberg, L.L.P., Washington, DC, for Uniboard Aktiebolag, plaintiff.

Robert Anton Molan, Nixon & Vanderhye, Arlington, VA, for Acer America Corp, defendant.

Henry A. Petri, Jr., Howrey, Simon, Arnold & White, LLP, Houston, TX, for AST Research, Inc., defendant.

Richard Loren Stanley, Henry A. Petri, Jr., Howrey, Simon, Arnold & White, LLP, Houston, TX, Steven M. Zager, Brobeck, Phleger & Harrison, LLP, Austin, TX, for Compaq Computer Corp., defendant.

David A. Super, Baker Botts, LLP, Washington, DC, Mitchell D. Lukin, Baker & Botts, L.L.P., Houston, TX, for Dell Computer Corp., defendant.

Richard Loren Stanley, Henry A. Petri, Jr., Howrey, Simon, Arnold & White, LLP, Houston, TX, Steven M. Zager, Brobeck, Phleger & Harrison, Austin, TX, pro hac vice, for Digital Equipment Corp., defendant.

Robert M. Rader, Winston & Strawn, Washington, DC, Martin L. Lagod, Michele E. Moreland, Gary H. Ritchey, Cooley Godward LLP, Palo Alto, CA, for Gateway 2000, Inc., defendant.

Thomas Jefferson Scott, Jr., Scott L. Robertson, Hunton & Williams, Washington, DC, for Hewlett Packard Co., defendant.

Christine Liverzani Prame, Sidley & Austin, Washington, DC, for Packard Bell NEC, Inc., defendant.

## *MEMORANDUM*

JOHN GARRETT PENN, District Judge.

Currently pending before the Court are defendants' Motions to Dismiss, or in the Alternative, for Summary Judgment.[1] For the reasons set forth in this memorandum, the motions to dismiss are granted.

## *BACKGROUND*

The pertinent background of this case is largely uncontested. Hakan Lans ("Lans") filed United States Patent No. 4,303,986 ("'986 patent"), entitled "Data Processing System and Apparatus for Color Graphics Display," on January 9, 1979. The '986 patent was issued on December 1, 1981, by the United States Patent and Trademark Office. Among other things, the inventions covered by this patent optimize and accelerate the performance of

---

1. For purposes of this memorandum, the Court addresses arguments raised in the motion to dismiss filed by defendant Gateway 2000, Inc. ("Gateway"). All of the other defendants in this action adopted Gateway's motion to dismiss. Consequently, Uniboard Aktiebolag ("Uniboard") filed a consolidated opposition to the motion to dismiss, and each of the defendants adopted Gateway's reply memorandum. At the oral argument on the motion to dismiss, Gateway's counsel spoke on behalf of the other defendants.

color graphics subsystems in contemporary computers. According to Uniboard's complaint, the '986 patent expired on January 9, 1999. Complaint at ¶¶ 15, 16, 18.

By letter dated September 27, 1996, Lans advised defendants of alleged infringements of the '986 patent. Complaint at ¶ 21. When defendants failed to refrain from the alleged infringement, or seek a settlement of the dispute, Lans filed suit against the defendants in his own name on October 24, 1997.[2]

During the normal course of discovery, Gateway discovered that, on October 19, 1989, Lans had executed an "Assignment and Declaration" in which Lans

> sold, assigned and transferred to Uniboard Aktiebolag ("Uniboard" or "Uniboard AB")[3], a Swedish corporation, all [his] right, title and interest in and to United States Patent No. 4,303,986 and all patents and patent applications of other countries corresponding to said United States patent, together with the right to sue third parties in respect of any infringement of any of said patents and patent applications which infringement has occurred prior to the date of this assignment. [Furthermore] the said Uniboard Aktiebolag is now the sole owner of said United States patent and said patents and patent applications of other countries corresponding thereto.

Assignment and Declaration (attached to Consolidated Opposition of Uniboard Aktiebolag to Motions of Defendants to Dismiss Uniboard's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the Alternative for Summary Judgment ("Uniboard's Consolidated Opposition") (filed Jan. 3, 2000)). *See also* Complaint at ¶ 17.

On November 23, 1999, this Court granted summary judgment to the defendants and dismissed the *Lans* cases for patent infringement. The basis for dismissal was that Lans conceded that, although he was the original inventor-patentee, he was no longer the owner of the patent due to the assignment to Uniboard. *See Lans v. Gateway 2000, Inc.*, 84 F.Supp.2d 112, 114 (D.D.C.1999). As such, the Court concluded that Lans lacked standing to sue for the patent's infringement. *Id.*, at 123. The Court also denied Lans's motion to amend the complaint in order to substitute Uniboard as plaintiff. *See Id.*, at 115–22.

Upon dismissal of the *Lans* cases, Lans and Uniboard embarked on two separate tracks, although they both continued to be represented by the same counsel. First, Lans, in his personal capacity, filed an appeal of the Court's dismissal of the *Lans* cases with the United States Court of Appeals for the Federal Circuit ("Federal Circuit") on December 22, 1999. Furthermore, on January 24, 2000, Lans filed motions under Federal Rule of Civil Procedure 60(b)(2) ("Rule 60(b)(2)"), requesting relief from judgment due to the discovery of new evidence.[4] Finding that the new

---

**2.** Collectively referred to as "the *Lans* cases," the lawsuits previously filed against the defendants are *Lans v. Digital Equipment Corp.*, No. 97–2493 (D.D.C. filed Oct. 24, 1997); *Lans v. Gateway 2000*, Inc., Not. 97–2523 (D.D.C. filed Oct. 24, 1997); *Lans v. Hewlett-Packard Co.*, No. 97–2524 (D.D.C. filed Oct. 24, 1997); *Lans v. Packard Bell NEC, Inc.*, No. 97–2525 (D.D.C. filed Oct. 24, 1997); *Lans v. Dell Computer Corp.*, No. 97–2526 (D.D.C. filed Oct. 24, 1997); *Lans v. Compaq Computer Corp.*, No. 97–2527 (D.D.C. filed Oct. 24, 1997); *Lans v. Acer America Corp.*, No. 97–2528 (D.D.C. filed Oct. 24, 1997); and *Lans v. AST Research, Inc.*, No. 97–2529 (D.D.C. filed Oct. 24, 1997). Two other related suits, *Lans v. Olsy North America*, No. 97–

2530 (D.D.C. filed Oct. 24, 1997), and *Lans v. Siemens Nixdorf Info.*, No. 98–0050 (D.D.C. filed Jan. 9, 1998), have been previously dismissed.

**3.** According to Lans, he has been the managing director and sole shareholder of Uniboard since 1985. *Lans v. Gateway 2000, Inc.*, 84 F.Supp.2d 112, 113 n. 2 (D.D.C.1999).

**4.** This new evidence consisted of a "Clarification–Contract," which attempted to clarify that Lans had retained certain rights over the patent. The Clarification–Contract was supposedly executed on October 27, 1989, and was executed by Lans, both in his personal

evidence submitted by Lans did not satisfy the requirements of Rule 60(b)(2), the Court denied those motions. It is the Court's understanding that Lans has subsequently appealed those rulings to the Federal Circuit as well.[5]

Second, on November 29, 1999, Uniboard filed its own patent infringement action against the eight defendants from the *Lans* cases.[6] On December 23, 1999, defendant Gateway filed a motion to dismiss for failure to state a claim. As noted above, each of the other defendants adopted Gateway's motion. With the motion fully briefed, the Court held oral arguments on June 7, 2000.

### DISCUSSION

In response to Uniboard's complaint, defendant Gateway filed a motion to dismiss for failure to state a claim. Gateway's theory is that Uniboard can only collect damages for the period of infringement after the date on which Uniboard provided actual notice of the infringement. Gateway alleges that this date is November 29, 1999, the date on which the Uniboard suit was filed. Since the patent expired on January 9, 1999, there is no measurable period of damages, and no injunctive relief is possible. Therefore, the suit must be dismissed.

Uniboard replies that defendants received actual notice of the infringement on one of two earlier dates: either September 27, 1996, the date on which Lans originally wrote to the defendants, or October 24, 1997, the date on which the *Lans* cases were filed.[7] Uniboard alleges that both of

these notices satisfy the notice requirement. Gateway alleges that neither of these notices are sufficient since both came from Lans in his personal capacity, and not from Uniboard.

### I.

The Court begins by looking at the notice requirement, as expressed in the patent statutes, and as construed by the courts. The patent law, provides, in relevant part, that

> in the event of failure ... to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a) (2000).

The constructive notice (marking) provision of § 287(a) is not relevant to this dispute, as Uniboard does not allege that it complied with the patent marking provisions. Therefore, the Court focuses its inquiry on if and when Uniboard provided the defendants actual notice of the alleged infringement.

The controlling Supreme Court precedent in this dispute is *Dunlap v. Schofield*, 152 U.S. 244, 14 S.Ct. 576, 38 L.Ed. 426 (1894). *Dunlap* interpreted the notice requirements of section 4900 of the Revised Statutes, the precursor to the modern section 287(a). In addressing the

capacity and in his capacity as Uniboard's representative.

5.  As this Court has jurisdiction over the *Lans* cases and the present matter pursuant to 28 U.S.C. § 1338, the Federal Circuit has exclusive jurisdiction over the appeal of any final decision entered by this Court in the *Lans* cases and the present matter. *See* 28 U.S.C. § 1295(a).

6.  The case was originally assigned to Hon. Thomas Penfield Jackson. Pursuant to an

order of the Court's Calendar Committee, this case was transferred to this Court on February 14, 2000. Defendants had motioned for the transfer due to this case's relation to the *Lans* cases.

7.  In paragraphs 22 and 23 of its complaint, Uniboard refers to the patent as "the Lans patent," and alleges that defendant received notice of the infringement by means of the letter Lans sent to the defendants on September 27, 1996.

notice requirement, *Dunlap* places the responsibility of providing notice squarely on the patentee, holding that

> the patentee or his assignee, if he makes or sells the article patented, cannot recover damages against infringers of the patent, unless he has given notice of **his** right, either to the whole public, by marking his article 'Patented,' or to the particular defendants, by informing them of **his** patent, and of their infringement of it.
>
> One of these two things—marking the articles, or notice to the infringers—is made by the statute a prerequisite to the patentee's right to recover damages against them. Each is an affirmative fact, and is something to be done by him. Whether his patented articles have been duly marked or not is a matter peculiarly within his own knowledge; and, if they are not duly marked, the statute expressly puts upon **him** the burden of proving the notice to the infringers before he can charge them in damages.

*Dunlap*, 152 U.S. at 247–48, 14 S.Ct. at 577 (emphasis added).

■ The Court's understanding of *Dunlap* is that it places the burden of providing notice to parties suspected of patent infringement squarely on the patentee or his assignees, whomever has legal title to the patent. This, in part, reflects that section 287's

> clear purpose, when a patentee has failed to mark his article so as to charge the public with constructive notice, is to require actual notice of the alleged infringement to the defendant as a condition for the recovery of damages. It is not asking too much of a patentee who receives a monopoly grant under his patent for a 17–year period that he either mark his product or serve actual notice upon a claimed infringer if he seeks to recover damages.

*Lemelson v. Fisher Price Corp.*, 545 F.Supp. 973, 975 (S.D.N.Y.1982).

The Federal Circuit has had occasion to consider section 287's actual notice requirement. In *Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, (Fed.Cir.1987) ("*DFM*"), the court considered a situation in which the plaintiff failed to provide either constructive notice through marking or actual notice, but in which the defendant had independent knowledge of the patent and even stipulated to the infringement. The trial judge instructed the jury that in order to establish infringement, DFM had to show that section 287's notice requirement had been satisfied. Not finding any action undertaken by DFM to provide the defendant with actual notice of the infringement, the jury concluded that the notice requirement had not been satisfied, and that DFM was not entitled to any damages, despite defendant's independent knowledge of DFM's patent. On appeal, plaintiff argued that "stipulation of infringement made notice unnecessary, that [Boehl] admitted 'knowledge of the patents.'" *DFM*, 822 F.2d at 1066. The Federal Circuit dismissed both of these assertions, holding that "DFM's suggestion that notice was rendered unnecessary by the stipulation is simply irrational. Absent notice, Boehl's 'knowledge of the patents' is irrelevant. Section 287 requires 'proof that the infringer was notified of the infringement.'" *Id.* In summary, the court affirmed the conclusion that DFM had failed to carry its burden of demonstrating that it had performed affirmative acts in compliance with section 287. Furthermore, in *American Medical Systems, Inc. v. Medical Engineering Corp.*, 6 F.3d 1523, 1537–38 (Fed.Cir.1993) ("*AMS*"), the court held that notice of infringement of a patent must come from the patentee, and that section 287(a) requires the party asserting infringement to provide either constructive notice through marking or actual notice.

The Federal Circuit has further followed *Dunlap* in one of its more recent interpretations of section 287. In *Amsted Industries Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 186 (Fed.Cir.1994), the Federal

Circuit held that *Dunlap* "established that notice must be an affirmative act on the part of the patentee which informs the defendant of his infringement."[8] Furthermore, *Amsted* held that "[it] is irrelevant, ..., whether the defendant knew of the patent or knew of his own infringement. The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Amsted*, 24 F.3d at 187. *See AMS*, 6 F.3d at 1537 n. 18, *Devices for Medicine*, 822 F.2d at 1066; *see also Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed.Cir.1996).

■ Considering the plain meaning of section 287(a), as well as *Dunlap* and the Federal Circuit precedents discussed herein, Uniboard has the burden of demonstrating that it took affirmative acts to provide the defendants with actual notice of potential infringements of the '986 patent.[9] The Court's inquiry into if and when the defendants received actual notice will focus on Uniboard's actions.[10] Any knowledge the defendants might have had of the infringements before Uniboard gave them actual notice is irrelevant.

## II.

■ The Court now turns to the issue of determining if and when Uniboard provided actual notice to the defendants. Under the facts of this case, there are three potential dates on which actual notice was provided to the defendants: September 27, 1996 (the date on which Lans wrote to the defendants about potential infringement); October 24, 1997 (the date on which Lans filed suit against the defendants for infringement); and, November 29, 1999 (the date on which Uniboard filed suit against the defendants for infringement). Since the patentee is Uniboard, it appears that any notice given by Lans is not sufficient to satisfy Uniboard's burden. It is irrelevant that Lans is the inventor of the patent since he assigned his rights to the patent, including the right to sue for its infringement, to Uniboard.

However, as with the previous *Lans* cases, the analysis gets complicated be-

---

8. The parties have spent considerable energy wrangling over a misquotation of *Dunlap* in the *Amsted* opinion. As noted above, *Dunlap* held that notice was an "affirmative fact, and is something to be done by [the patentee]." *Dunlap*, 152 U.S. at 247–48, 14 S.Ct. at 577. In *Amsted*, however, the quotation from *Dunlap* converts the phrase "affirmative fact" into "affirmative act." *See Amsted*, 24 F.3d at 187. This misquotation is the subject of a law review article cited to by Uniboard. *See* Michael J. McKeon, *The Patent Marking and Notice Statute: A Question of "Fact" or "Act"?*, 9 Harv.J.L. & Tech. 429 (1996). Recognizing that the Federal Circuit appears to have misquoted *Dunlap*, the Court is hard-pressed to conclude that the misquotation changes the substantive nature of the notice requirement. The Court understands *Dunlap* to require the patentee to establish as an affirmative fact that he gave notice to the infringer, while *Amsted* requires notice to the infringer to be an affirmative act done by the patentee. There is little to choose between these two requirements, and the Court has been unable to locate any other judicial precedent which would undermine *Amsted's* status as controlling authority in the Federal Circuit.

9. *See also Motorola, Inc. v. United States*, 729 F.2d 765, 770 (Fed.Cir.1984) ("patent owner-plaintiff must plead before trial and then show at trial that he ... complied with the requirements of [section 287]").

10. At oral argument, Uniboard essentially asked the Court to limit its test to a bar against notice coming from within the infringer's "circle." Since Lans was within Uniboard's "circle," attributing any notice from Lans to Uniboard would not be inconsistent with *Amsted* and other Federal Circuit precedent, or so the theory goes. While such an interpretation is indeed tempting, it must be rejected because it flies in the face of the very purpose for requiring the actual patentee to provide actual notice in lieu of marking—namely to put the defendant on notice of which patent is being infringed, the specific actions which infringe the patent, and who the patentee is. The value in having notice come from the actual patentee should not be minimized, since the patentee (or his licensee) is the only party able to assert an infringement action, and is the only party from whom the defendant would be able to seek a license for the patent or some other form of settlement.

cause of the relationship between Lans and Uniboard. As already noted, Lans is the sole shareholder and managing director of Uniboard. Because of this status, Uniboard argues that Lans is the only individual who could have given notice on its behalf, and that Lans is the only individual available to vindicate its rights under the patent. Alternatively, defendants argue that since Lans and Uniboard are two distinct legal entities, any notice given by Lans on his own behalf is insufficient to satisfy Uniboard's burden.

This Lans–Uniboard dichotomy is directly analogous to the situation in the original *Lans* cases. In those cases, the Court held that Lans was unable to maintain an infringement action against the defendants in his personal capacity. *See Lans v. Gateway 2000, Inc.*, 84 F.Supp.2d 112 (D.D.C.1999). As the Court noted,

> although Lans might be the managing director and sole shareholder of Uniboard, Lans and Uniboard are two distinct legal entities. "One of the more important and pervasive principles underlying corporations law is the 'entity theory.' This theory provides that a corporation is a separate entity, distinct from its corporate and non-corporate shareholders.... A corporation is an entity irrespective of, and entirely distinct from, the persons who own its stock, and it is well settled that all the shares in a corporation may be held by a single person and yet the corporation continue to exist; nor does the fact that one person owns all the stock, make him and the corporation one and the same person...." *Stamp v. Inamed Corp.*, 777 F.Supp. 623, 626 (N.D.Ill.1991) (citations omitted); *see generally* Fletcher Cyc. Corp. §§ 25, 25.10 (Perm.Ed.). Furthermore, the law generally does not allow the option of "reverse piercing" the corporate veil when it suits the corporation's owner. *See* Fletcher Cyc. Corp. § 41.70 (Perm.Ed.) ("[The] better rule would seem to be that a person who has voluntarily adopted the corporate

form to engage in business is precluded from asking courts to disregard that form merely because the person is disadvantaged by its use.").

*Lans*, 84 F.Supp.2d at 123 n. 10.

The Court's previous holding in *Lans* necessitates the result in this case. Any notice provided by Lans in his personal capacity is not attributable to Uniboard. However, if Lans sent notice to the defendants in his capacity as Uniboard's managing director and sole shareholder, then that notice would be sufficient for the purposes of section 287.

### III.

Having held that the Court's inquiry into whether section 287(a)'s actual notice requirement has been satisfied will focus on Uniboard's actions, and having further held that any notice given by Lans in his personal capacity does not satisfy Uniboard's burden, the Court now turns to an evaluation of the potential dates of actual notices referenced by the parties.

### A. September 27, 1996

■ The initial contact between Lans and the defendants came in the form of letters ("September 1996 letters") sent by Lans to each of the defendants informing them that some of their product might infringe the '986 patent. Each defendant was sent essentially the same letter, copies of which are attached to Uniboard's Consolidated Opposition to Gateway's Motion to Dismiss ("Consolidated Opposition") (filed Jan. 3, 2000).

The September 1996 letters do not satisfy section 287(a)'s requirements for two reasons. First, the letters do not meet the requirement that the notice come from the actual patentee. A cursory review of the letter sent to Gateway ("Lans Letter to Gateway" (attached to Consolidated Opposition, Exh. B)) plainly reveals that Lans was acting in his own personal capacity. Not only is Uniboard not referenced anywhere in the letter, the letter goes so far

as to state that "**Lans** is prepared to offer a license" to Gateway to remedy the infringement. Lans Letter to Gateway at 2 (emphasis added). This clearly indicates that Lans was acting on his own behalf, not as Uniboard's corporate representative.

■ Second, the September letters do not appear to the Court to have the level of specificity required to put the defendants on notice of the infringement. As *Amsted* instructs, "notice must be of 'the infringement,' not merely notice of the patent's existence or ownership. Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted,* 24 F.3d at 187. Again reviewing the September 1996 letters submitted by Uniboard as proof of notice, the Court cannot identify a single specific charge of infringement by a specific accused product or device of the defendants. What each letter does provide is notice of the patent's existence, a statement that Lans considers the defendants to have infringed the '986 patent, a reference to infringement litigation in Germany involving the '986 patent, and a description of Lans's background and credentials. Thus, the letters lack the required level of specificity contemplated by section 287(a) and *Amsted.*

For both of these reasons, the September 1996 letters from Lans to the defendants do not constitute actual notice from Uniboard.

**B. October 24, 1997**

■ The *Lans* cases, previously mentioned, were filed on October 24, 1997.[11] A review of the complaints filed in the *Lans* cases reveals that they suffer from the same basic flaw as the September 1996 letters: not only are they devoid of any references to Uniboard, their clear language suggests that Lans filed the com-

plaint solely on his own behalf. For example, the complaint against Gateway refers to "Mr. Lans' patent rights." Lans Complaint at ¶ 13. The complaint refers to an "amount of money damages that Mr. Lans has suffered by reason of the acts of infringement." Lans Complaint at ¶ 14. Finally, the Prayer for Relief is stylized as Mr. Lans's prayer for relief, and seeks an "award to Mr. Lans for his damages", as well as an "award for Mr. Lans' costs and attorneys' fees." Lans Complaint at 4. Without belaboring the point, Lans's complaints suffer from the same problem of authorship as the September 1996 letters. Therefore, the complaints filed on October 24, 1997, in the *Lans* cases are not sufficient notice in the present action.

**C. November 29, 1999**

■ As previously noted, following this Court's dismissal of the *Lans* cases, Uniboard filed this action against the same defendants that Lans had sued on November 29, 1999. Since Uniboard is the patentee, its complaint satisfies section 287's notice requirement. Having considered the relevant evidence and the oral arguments of the parties, the Court holds that the first date on which Uniboard gave actual notice to the defendants of the infringement of the '986 patent is November 29, 1999.

**IV.**

■ Having established that the first date on which Uniboard gave notice to the defendants of the infringement of the '986 patent is November 29, 1999, the Court now turns its attention to the basis for dismissing this complaint. Section 287 does not permit a patentee to collect infringement damages unless the product is marked, or until after notice of infringement has been given. Furthermore, 35 U.S.C. § 271(a) provides that "whoever

---

11. For purposes of this memorandum, the Court refers to the complaint filed in *Lans v. Gateway,* No. 97–2523 (D.D.C. filed October 24, 1997) ("Lans Complaint"). This com-

plaint is identical in all relevant aspects to the complaints Lans filed against the other seven defendants.

without authority makes, uses or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor [sic], infringes the patent." Construing these statutory provisions together, the period of damages for infringement of an unmarked patent is necessarily limited to the period of time between the date on which the patentee first gave actual notice to the infringer and the date on which the patent expires.

The '986 patent expired on January 9, 1999, but Uniboard did not give notice to the defendants of the alleged infringement until November, 29, 1999, and there's the rub. Since Uniboard did not give notice of the alleged infringement to the defendants until after the '986 patent had expired, there exists no period of time for which defendants can be held liable for damages resulting from the alleged infringement of that patent. Furthermore, since the patent has already expired, no injunctive relief is available either. As a result, plaintiff has failed to state a claim for which relief can be granted. Therefore, the motions to dismiss the complaint must be granted.

### CONCLUSION

For the reasons set forth in this memorandum, defendants' motions to dismiss are granted. An appropriate order accompanies this memorandum.